**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Mildred Irene SIEGEL, Respondent.**

**No. 15432.**

United States Court of Appeals
Ninth Circuit.

Nov. 6, 1957.

---

Charles K. Rice, Asst. Atty. Gen., C. Guy Tadlock, Ellis N. Slack, Lee A. Jackson, Helen A. Buckley, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Dana Latham, A. R. Kimbrough, Grover Heyler, Henry C. Diehl, Los Angeles, Cal., for respondent.

Before FEE and BARNES, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

The question involved in this petition by the Commissioner of Internal Revenue to review [1] a decision of the Tax Court

1. 26 U.S.C., 1952 Ed., § 1141(a) and (c) (1); I.R.C., 1954, § 7482(a) and (c) (1), 26 U.S.C. § 7482(a), (c) (1); Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

rendered October 3, 1956, turns on the correctness of the determination by the Tax Court of a deficiency, arising under the federal gift tax law for the taxable year 1950, of the respondent Mildred Irene Siegel, to be referred to hereinafter as the taxpayer.[2]

On February 8, 1954, the Commissioner of Internal Revenue mailed to the taxpayer a notice of a deficiency in the total amount of $51,144.24. The assessment was based on a determination which read in part:

> "The transfer by the above-named donor to her son of a remainder interest in her one-half interest in community property which she transferred to a testamentary trust established under the last will and testament of Irving Siegel, Deceased, is determined to constitute a transfer by said donor without consideration in money or money's worth, and a gift within the meaning of Section 1000 of the Internal Revenue Code."

On April 29, 1954, the taxpayer filed a petition with the Tax Court for a redetermination of the deficiency.[3] The Tax Court entered its decision on October 3, 1956, determining, in effect, that the taxpayer's transfer having been made in consideration of her waiver of her community rights and her acceptance of the benefits under the will, only the excess of the value of her transfer over what she received was a taxable gift. The Tax Court determined the amount to be $4,314.87, which has been paid.

## I.

Facts Admitted or Uncontroverted.

In the main, the facts are not in dispute, either because they were stipulated or found by the Court on evidence which stands uncontradicted. So, unless the facts warrant different legal conclusions, the decision of the Tax Court must stand.[4]

In outline, the facts are:

The taxpayer and Irving Siegel, to be referred to as Siegel, were husband and wife and residents of the State of California. Siegel died in California on January 4, 1949. The Siegels had an adopted son, Richard Bruce Siegel, who was born on May 14, 1943, and who resides with the taxpayer. Siegel left an estate consisting entirely of community property acquired by him, as the Tax Court found, and his wife since 1927.[5] The Tax Court also found that on the date of Siegel's death, the gross value of the community property was $1,422,897.14, and the gross value of the taxpayer's half share in it was $711,448.57. At the time of the hearing, the Tax Court determined that on January 5, 1950, the date of the taxpayer's election to take under the Will, to be referred to later on, the net value of Siegel's share to be $295,076.54 and that of the taxpayer's $584,035.44. The computation was arrived at in this manner:

|  | Siegel's Share | Taxpayer's Share |
| --- | --- | --- |
| Gross value at Irving's death .. | $711,448.57 | $711,448.57 |
| Less: | | |
| Debts and administration expenses ...................... | 114,886.25 | 114,886.25 |
| Federal estate tax ............ | 201,840.48 | |
| Inheritance taxes on bequests other than to petitioner .... | 26,145.30 | |
| Inheritance tax on bequests to petitioner ................... | | 9,026.88 |
| Legacies other than to petitioner ......................... | 35,000.00 | |
| Legacy to petitioner .......... | 35,000.00 | |
| Automobiles bequeathed to petitioner ................... | 3,500.00 | 3,500.00 |
| Total deductions ................ | $416,372.03 | $127,413.13 |
| Net value ...................... | $295,076.54 | $584,035.44 |

2. 26 T.C., Prentice-Hall Ed., 743.

3. I.R.C., 1954, § 6213, 26 U.S.C. § 6213.

4. Gillette's Estate v. Commissioner, 9 Cir., 1950, 182 F.2d 1010, 1013–1015; Gensinger v. Commissioner, 9 Cir., 1953, 208 F.2d 576, 583; McGah v. Commissioner, 9 Cir., 1954, 210 F.2d 769, 771; Wener v. Commissioner, 9 Cir., 1957, 242 F.2d 938, 944–945.

5. California Civil Code, §§ 164, 687.

Siegel left a Will, dated March 28, 1948, which was admitted to probate in the Superior Court of Los Angeles County, California, on February 3, 1949. The will contained a provision bequeathing to the taxpayer, in addition to some minor gifts, the sum of $35,000 ("to offset", as the will stated, a like sum bequeathed to his "sisters and nephew") and created a trust to pay to her during her lifetime, and to the son, thereafter, the income of the estate. The instrument provided that the payments shall be such as the trustees

"deem proper to maintain at least the same standard of living to which she has been accustomed in recent years, but in no event less than the sum of $1000.00 per month."

The taxpayer was named one of three trustees and the will specifically provided that should she determine to take her community property share, "she should take nothing as a beneficiary under the trust". The three clauses relating to these matters are set forth in the margin.[6] The reference to the standard of living in the will is important in view of the fact that the Tax Court found that in 1948, the year preceding his death, the living expenses of the taxpayer and her husband before income taxes were $46,500.

On January 5, 1950, the taxpayer executed and filed with the Superior Court an instrument electing to take under Siegel's last will and testament in lieu of all community property rights which she had in the estate. The Tax Court found that since that time, she received

6. "Three: I give, devise and bequeath to my beloved wife, Mildred Irene Siegel, the property which I may be occupying at the time of my death as my home, together with the furniture, furnishings and equipment located therein, all my personal effects as well as any automobiles which I may own at the time of my death, and in addition thereto I give, devise and bequeath to my said wife, the sum of Thirty-five Thousand ($35,000.00) Dollars, which bequest is made primarily to offset the thirty-five thousand dollars which I am hereinafter bequeathing to my sisters and nephew, to the end that she may either retain this sum for her own use and benefit or divide it among her relatives in such manner as she may see fit.

\* \* \* \* \*

"Seven: All the rest, residue and remainder of my estate I give, devise and bequeath to my wife, Mildred Irene Siegel, Ben Weingart and N. B. Alison, or the survivor of them In Trust, however, for the uses and purposes hereinafter specified and not otherwise:

"(a) To pay to my beloved wife, Mildred Irene Siegel, for the support, maintenance and care of herself and our beloved son, Richard Bruce Siegel, such sum as in the sole discretion of the majority of said trustees they deem proper to maintain at least the same standard of living to which she has been accustomed in recent years, but in no event less than the sum of One Thousand ($1,000.00) Dollars per month;

\* \* \* \* \*

"(c) In the event the net income from my trust estate is not sufficient to make the payments above provided, then and in that event I specifically authorize my Trustees to make payments from the corpus of said trust estate to the extent necessary to provide for the payments as above set forth;

\* \* \* \* \*

"(j) I specifically direct that during the life of the three trustees herein named, a majority thereof shall be authorized to act for and on behalf of said trustees, which if two living it shall require their unanimous approval, and if they are not able to agree, then either may petition the Court having jurisdiction of the probate of my estate for instructions;

\* \* \* \* \*

"Eight: The provisions made in this my Last Will and Testament for my beloved wife, Mildred Irene Siegel, are in lieu of her community rights and interests, and if she elects to take her community interest, in lieu of taking under this my Last Will and Testament, then the bequests made to her in Paragraph Three hereof shall be of no force and effect and the real and personal property so bequeathed shall become a part of the rest, residue and remainder of my said estate to be distributed to my said trustees, and likewise subdivision (a) of paragraph Seven shall be of no force and effect and she shall take nothing as a beneficiary under said trust."

and expended from the trust the following amounts:

| | Received from the trust | Total expenditures | Federal and State income taxes included in total expenditures |
|---|---|---|---|
| 1950 | [1]$24,000 | $31,720.32 | $ 4,500.00 |
| 1951 | 54,000 | 50,462.11 | 18,524.23 |
| 1952 | 54,000 | 43,313.60 | 20,296.83 |
| 1953 | 52,000 | 46,656.79 | 18,413.06 |
| 1954 | 48,000 | 47,267.98 | 22,329.39 |

([1]Taxpayer also received an $18,000 allowance from Siegel's estate in 1950.)

In setting up these tables, the Tax Court made the following additional findings:

"Included in the above total expenditures were sums expended by petitioner for the support of her and Irving's son which averaged well under $3,000 per year.

"Under the economic conditions existing during the years subsequent to decedent's death and prior to this hearing it would cost petitioner $45,000 per year, including income taxes to maintain the standard of living to which she was accustomed in recent years prior to decedent's death."

On the basis of these findings, it concluded that the surrender by the taxpayer of her community property rights was a gift to the estate to the extent that the value of the interest thus surrendered exceeded the value of the interest she acquired under the terms of the will.

In determining the values the Tax Court ruled that the amount of the gift should be measured by the taxpayer's community interest reduced by the present value of her life interest in the entire community property and a specific bequest of $35,000 granted to her by the terms of the will.

In sum, the Tax Court treated the transfer as being one in which what the taxpayer surrendered *was the consideration* for what she received.

In this petition for review, the Commissioner contests this basic principle and the reasons upon which it is grounded.

## II.

### The Problem of Consideration.

It is the contention of the Commissioner that in this manner the Tax Court misapplied to the facts Section 1002 of the Revenue Code of 1939, which reads:

"Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year." [7]

We are of the view that the Commissioner's contention that the transaction was donative and that, as his brief puts it, "the taxpayer received no consideration whatsoever, adequate or not, for making the election" is without merit. The issue must be determined in the light of the community property law of California and the law of wills.

The election made by the taxpayer reads:

"Election of Widow to Take Under Will

"I, the undersigned, Mildred I. Siegel, widow of Irving Siegel, deceased, do hereby elect to take under the Last Will and Testament of said deceased *in lieu of any and all community property rights which I have* in said estate." (Emphasis added.)

"Dated this 5th day of January, 1950."

█ Elections to take under a will by one of the spouses instead of property

7. 26 U.S.C., 1952 Ed., § 1002.

that he or she may be entitled to under state law have long been recognized as transactions in which the property surrendered is considered the consideration for the offer made in the will and accepted at the time of the execution of the will in a contemporaneous instrument or thereafter. In all instances, the effect of the election is determined by the status of the property under the law of the state.[8]

"The gift by will in lieu of the other right is said to be equivalent to an offer, and to offer something to the devisee in return for his property or interest."[9]

█ Most writers on the law of contracts and Courts which have dealt with the matter are in accord that the property surrendered is a consideration for that which is accepted, and what may begin as a unilaterial offer turns into a binding contract upon such acceptance.[10]

In the present case, the Tax Court found that the property left by Siegel was community property acquired by

---

8. 97 C.J.S. Wills § 1287(d) (1) (2); Page on Wills, 3rd (Lifetime) Ed., 1941, Vol. 4, § 1346, 1501, 1502, 1503. It is axiomatic that in applying federal revenue acts, the interests and rights to be taxed are determined by federal law, but "state law creates legal interests and rights". Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 625, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035. And see, Helvering v. Stuart, 1942, 317 U.S. 154, 162; Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111; Nelson's Estate v. Commissioner, 1956, 5 Cir., 232 F.2d 720, 724. This Court has held that for federal tax purposes, the nature of a transfer of a one-half interest in a California partnership from a father to a son, the income from which the son returned as community property, was to be determined by California law. The son paid for it by a promissory note in the sum of $100,000, payable without interest and out of the 25% of the son's share in the future earnings of the partnership. Some payments were made on the note. The transfer was evidenced by a bill of sale. The father and son treated the property as a sale and the son reported his income as community property. The Tax Court treated the transfer as a "gift". This Court reversed. It held that the transfer was a sale and that the son could

"forthwith convert the property, under California law, into community property by agreement between himself and his wife." Goold v. Commissioner, 9 Cir., 1950, 182 F.2d 573, 575.

And see, Blair v. Commissioner, 1937, 300 U.S. 5, 13, 57 S.Ct. 330, 81 L.Ed. 465; Goodwin's Estate v. Commissioner, 6 Cir., 1953, 201 F.2d 576, 580–582. See, Comment, Joint Tenancy v. Community Property in California: Possible Effect Upon Federal Income Tax Basis, 3 U.C. L.A.Law Rev., 1956, pp. 636, 645–648.

9. Page on Wills, supra, Note 8, § 1346. Ragsdale v. Robinson, 1942, 219 Ind. 355, 38 N.E.2d 570; Mead v. Phillips, 1943, 77 U.S.App.D.C. 365, 135 F.2d 819, 824; Muse v. Muse, 1947, 186 Va. 914, 915, 45 S.E.2d 158, 2 A.L.R.2d 603.

10. Restatement on Contracts, § 75(1) (c) (d), § 90; Williston on Contracts, Revised Ed., 1936, §§ 13, 25, 101, 113; Corbin on Contracts, 1950, § 194. And see cases cited in Note 9. The Court of Appeals for the District of Columbia, in interpreting Maryland law, has summed up the effect of election, even in dower states, in this manner:

"One cannot come to a market as a purchaser with a fair consideration, if, as was held in the Collins case, the husband has 'power by his will to bar, or extinguish the common law rights of his widow'. The concept of purchasing with a fair consideration assumes rights and powers in the widow which cannot be cut off, except by her own election, on a bargaining basis. If she is to be considered a purchaser with a fair consideration, there is implicit the idea of offer and acceptance—that the husband's bequest is a valid offer which, to be binding, must be accepted by the widow." Mead v. Phillips, 1943, 77 U.S.App.D.C. 365, 135 F.2d 819, 826. (Emphasis added.)

Writers have called the accepted distinction between bilateral and unilateral contracts artificial and false. See, Samuel J. Stoljar, The False Distinction Between Bilateral and Unilateral Contracts, 1955, 64 Yale Law Jr., 515, where reference is made to the extensive critical literature on the subject. But all agree that the acceptance of a one-sided offer, for a consideration, results in a binding contract. 17 C.J.S. Contracts § 8; 12 Am. Jur., Contracts, § 8; Restatement on Contracts, §§ 19(c), 76.

Siegel and the taxpayer in California since 1927. *This date is of utmost importance.* For, since 1927, the interests of husband and wife in community property in California are declared to be "present, existing and equal interests".[11]

█ The California law of succession as to community property is stated in this manner:

"§ 201. Succession. Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code." [12]

The husband and wife may alter their legal relations as to property [13] and only one-half of the community property is subject to the testamentary disposition of the decedent.[14] When the husband makes a testamentary disposition of more than half of the community property and the wife chooses to take under the will, the half interest in the estate which she surrenders is a contract supported by adequate consideration. As stated by the Supreme Court of California in a noted case:

"The 'waiver' was in fact a contract, by the terms of which plaintiff accepted certain devises and bequests under the will in lieu of any right she might have in any community property. Such an agreement is clearly supported by consideration and is binding upon the plaintiff, irrespective of any element of estoppel arising from the testator's change of position in reliance upon the representation contained in the instrument." [15]

And the rule is the same whether the waiver be attached to the will or is contained in a separate instrument.[16] The wife is not put upon her election until the estate is ready for distribution.[17]

In view of the vested character of the interest of the wife in community property under California law even before death, if the property was, *as was the case here,* acquired since July 29, 1927,[18] decisions arising in states in which the wife has a mere dower right are not controlling. Indeed the decision of the Court of Appeals for the Second Circuit, made under New York state law on which the Commissioner relies represents a minority view.[19] A majority of the cases hold that although the widow's dower right is inchoate [20] upon the death of the husband she acquires a vested interest [21] and becomes "a purchaser for value".[22]

---

11. California Civil Code, § 161a.

12. California Probate Code, § 201.

13. California Civil Code, § 159.

14. California Probate Code, § 201.

15. Flanagan v. Capital National Bank of Sacramento, 1931, 213 Cal. 664, 666, 3 P.2d 307, 308.

16. In re Estate of Chapin, 1941, 47 Cal. App.2d 605, 610, 118 P.2d 499; Opp v. Frye, 1945, 70 Cal.App.2d 478, 490–491, 161 P.2d 235.

17. In re Estate of McCarthy, 1932, 127 Cal.App. 80, 85–86, 15 P.2d 223; In re Estate of Roberts, 1945, 27 Cal.2d 70, 75, 162 P.2d 461; In re Estate of Kelley, 1953, 122 Cal.App.2d 42, 43–44, 264 P. 2d 210.

18. California Civil Code, § 161a; California Probate Code, § 201.

19. Such as, e. g., Warner v. C. I. R., 2 Cir., 1933, 66 F.2d 403.

20. 28 C.J.S. Dower § 42; 17–A Am.Jur., Dower, § 77. In an old case the Supreme Court stated that "During the life of the husband the right is a mere expectancy or possibility." Randall v. Kreiger, 1874, 23 Wall. 137, 148, 90 U.S. 137, 23 L.Ed. 124.

21. This Court, in interpreting the law of dower of Montana, has said: "Under Montana law the dower interest of a wife is merely an inchoate right— whether treated as a bare expectancy or as a contingent interest—which does not become consummate until the husband's death." Bateman v. Donovan, 9 Cir., 1943, 131 F.2d 759, 763. (Emphasis added.)

22. The general rule is epitomized in an annotation to Muse v. Muse, supra, Note

A leading Massachusetts case has summed up the principle in this manner:

"The widow is a purchaser for value, in accepting the provisions of the will, and is not treated as a gratuitous object of the testator's bounty. By a relinquishment of her dower, the estate acquires a valuable right of property." [23]

There is general accord on the subject.[24]

---

9, entitled "Priority of surviving spouse who accepts provision of Will in lieu of dower or other marital rights over other legatees and devisees and creditors." (2 A.L.R.2d 607), in this manner:

" * * * the weight of authority is that since it is in consideration of an existing legal right, it constitutes the widow a purchaser for value and for that reason is entitled to priority over other general legacies or devises to volunteers of the testator's bounty, which must abate in the widow's favor." (Ibid., at page 610) (Emphasis added.)

23. Borden v. Jenks, 1886, 140 Mass. 562, 5 N.E. 623, 625.

24. The ruling in Helvering v. Butterworth, 1933, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, does not determine the question before us. There the Court was considering the question whether an annual income payable to a widow under a trust was taxable to her or to the trustees. The husband's will, after certain bequests, left the residue of his property to trustees with direction to pay the net income to the widow. She surrendered her rights under the state law, and, as the opinion states, "accepted under the will". 290 U.S. at page 368, 54 S.Ct. at page 222. The Court was construing Section 219 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 275 (26 U.S.C. § 960), which lay a tax upon "the income of estates or of any kind of property held in trust", allowing deductions for income distributed to beneficiaries.

Similar provisions were contained in the Act of 1926, c. 27, 44 Stat. 9, 32, 33, and the Act of 1928, c. 852, 45 Stat. 791, 838, §§ 161 and 162, 26 U.S.C. §§ 161, 162.

The trustees paid to the widow income during 1924 and 1925. The question before the Court was whether the amounts paid were taxable to her. The Court answered in the affirmative, holding that the widow was a **beneficiary**. The gist of the opinion is in this paragraph:

"Is a widow who accepts the provisions of her husband's will and receives part or all of the income from an established trust in lieu of her statutory rights a **beneficiary** within the ambit of the statute? We think she is. It is unnecessary to discuss her rights or position under other circumstances. We are dealing with a tax statute and seeking to determine the will of Congress. When she makes her election the widow decides to accept the benefits of the will with the accompanying rights and liabilities. In no proper sense does she purchase an annuity." Helvering v. Butterworth, supra, 396 U.S. at pages 369–370, 54 S.Ct. at page 222.
The case arose in Pennsylvania law which is not a community property state.

Subsequent cases are of the view that, regardless of the language used, all that the case decided was that "the income (from a trust) was taxable to the beneficiary and not to the trustees". Stone v. White, 1937, 301 U.S. 532, 534, 57 S.Ct. 851, 852, 81 L.Ed. 1265; and see, Thomas v. Commissioner, 2 Cir., 1938, 100 F.2d 408, 410; Harrison v. Commissioner, 7 Cir., 1941, 119 F.2d 963, 968–969; Daggett v. Commissioner, 9 Cir., 1942, 128 F.2d 568, 575; In re Roger's Estate (Stickney v. Commissioner), 2 Cir., 1944, 143 F.2d 695, 696; Burchenal v. Commissioner, 6 Cir., 1945, 150 F.2d 482, 485; Dunlop v. Commissioner, 8 Cir., 1948, 165 F.2d 284, 286–287.

But this is not the problem before us. The Court, in Helvering v. Butterworth, supra, wisely admonished that they were not discussing the widow's "rights or position under other circumstances". In the case before us, we are not determining whether the taxpayer was "a beneficiary". We consider another "circumstance", in which a taxpayer's "rights and position" under California community property are involved. We are determining whether, under California law, in surrendering her community property rights and taking under the will, she parted with value. Pertinently, this Court has said that for federal tax purposes, the character of property under a will is to be determined by state law:

"Whether the money here in question was received by the trustees as income or as corpus depends upon the effect of the language of the will under the law of the jurisdiction in which the estate is administered. * * * The government could not be bound by any determination of the parties at variance with the true facts. Here, however, the fact in ques-

The dower cases, as is evident, are based upon the theory that the contingent estate of the wife becomes vested upon the death of the husband. California law gives to each spouse a "present, existing and equal" interest in community property acquired since July 29, 1927.[25] During the lifetime of the husband, the entire community property is subject to his management and control.[26] Upon his death the property is released of his limited managerial and control powers and one-half of it, as the statute says, "belongs to the surviving spouse."[27] The other half is subject to the testamentary disposition of the decedent

"and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."[28]

■ Only one of the sections referred to affects the wife by providing that the community property passed from the control of the husband "is subject to

his debts and to administration and disposal."[29]

This Court, in interpreting California law, as changed by the Act of July 29, 1927, has held that the wife's interest being vested, her half never became a part of his estate:

"The Tax Court appears to have assumed that, upon decedent's death, petitioner's half of the community property ceased to be hers and became a part of decedent's estate. The assumption is incorrect. Petitioner's half, like decedent's half, was subject to administration, but, unlike his half, her half never became a part of his estate."[30]

■ The principle was reaffirmed by this Court in a recent case.[31] Significantly, both in the cases arising under dower rights and those arising under the community property laws of California the election made by the widow after the death of the husband is considered *binding* on her if the language of the waiver is clear, as it was in the case before us.[32]

---

tion is whether the money is to be part of the corpus of the trust. The trustee has determined that it is not, and it appearing that this determination is justified by the terms of the will and the law of Hawaii, it should be given effect here." Commissioner v. Bishop Trust Co., 9 Cir., 1943, 136 F.2d 390, 391.

So here, the question whether, in parting with her interest in the community property, the taxpayer parts with consideration is to be determined according to California law. See, Goold v. Commissioner, 9 Cir., 1950, 182 F.2d 573, 575. Under it, the wife has a vested interest in one-half of the community property. **When she parts with it, she parts with value.**

25. California Civil Code, § 161a.

26. California Civil Code, §§ 172 and 172a.

27. California Probate Code, § 201. It "never belonged" to the decedent. In re Estate of King, 1942, 19 Cal.2d 354, 363, 121 P.2d 716; In re Estate of Kelley, supra, Note 17, 122 Cal.App.2d at page 43, 264 P.2d at page 211.

28. California Probate Code, § 201.

29. California Probate Code, § 202.

30. Bishop v. Commissioner, 9 Cir., 1945, 152 F.2d 389, 391. In that case, this Court distinguished not only between cases arising under California community property law before and those arising since 1927, but also between cases arising under Washington and Texas community property laws because they contained **no** provisions similar to those obtaining in California since July 29, 1927. At page 391.

31. Wells-Fargo Bank & Union Trust Co. v. United States, 9 Cir., 1957, 245 F.2d 524, 528. And see cases cited in Note 27.

32. Muse v. Muse, supra, Note 9, and cases cited in Notes 15, 16 and 17. See also, In re Estate of Wyss, 1931, 112 Cal.App. 487, 297 P. 100. Cf. In re Estate of Brooks, 1946, 28 Cal.2d 748, 752–753, 171 P.2d 724. In the donative cases on which the Commissioner relies, we have either (a) joint wills (Commissioner v. McLean, 5 Cir., 1942, 127 F.2d 942; McFarland v. Campbell, 5 Cir., 1954, 213 F.2d 855, **both arising under Texas law)**, or (b)

## III.

### The Events Which Led to Surrender.

█ Factually, the record shows that the decision to accept the legacy under the will in lieu of the community property which she surrendered to the trust chiefly for the benefit of her son was arrived at by the taxpayer after full consultation between her and the trustees. In the hearing before the Tax Court, she testified in substance:

Her husband was only forty-seven years of age at the time of his death, dying of a coronary thrombosis which was sudden and unexpected. He had been a builder and contractor for over twenty-five years. They had been married for twenty-seven years, residing in California during the entire period of marriage except four years. The property accumulated was community property. She did not own any separate property of any consequence before marriage and neither of them had acquired any property by gift or inheritance at the time of her husband's death. The home they occupied cost $62,500, on which they made repairs amounting to $30,000, the furnishings of the house having been appraised in 1950 on the replacement basis as $60,000. They also owned a home at Palm Springs, completely furnished. For the calendar year 1947, the net income for federal tax purposes was $479,422.99 and for the year 1948, $230,399. Their living expenses, including the taxes for the year 1948—as shown by excerpts from the books—were $46,551.49.[33]

At the time of Siegel's death, the adopted son was five and one-half years of age.

Of the two persons named as co-trustees, one Ben Weingart was a close friend and associated in business with Siegel. The other, N. B. Allison, was also a close friend whom the taxpayer and Siegel had known since arriving in California in 1926. They were suggested as trustees with her because Siegel considered them the most capable men to administer his estate and to be trustees of the trust. Although she was named as one of the co-trustees, Siegel did not discuss with her the terms of his Will prior to his

---

trust funds created for the benefit of members of a family other than the wife who had no vested interest in the property and contributed little or nothing to the trust fund (Lehman v. Commissioner, 2 Cir., 1950, 109 F.2d 99, arising under New York law) and in which a transfer of property in trust by decedent's brother which was paid for by decedent was held to be a transfer by the decedent and part of his taxable estate; Giannini v. Commissioner, 9 Cir., 1945, 148 F.2d 285, arising under California law, in which this Court held that because the largest part of the consideration was contributed by the parents, the transfer was a gift). As appears from the foregoing discussion, in the case before us, the waiver of the wife's right to the community property was the transfer by her of a vested interest as consideration for the life estate and specific gift under the trust. So the reasoning of the donative cases does not apply. The fact stressed by the Commissioner that the taxpayer contended before the Tax Court that the transaction "was not a gift" under § 1002 of the Internal Revenue Code of 1939 (26 U.S.C., 1952 Ed., § 1002) and that, although the decision went against her, she has not appealed the ruling, has no bearing upon the determination of the question before us. She is not estopped from taking the position she now takes before this Court that, whether it was a gift or not, it was a transfer for a valuable consideration. What is important from the taxpayer's standpoint is that, contrary to the ruling of the Commissioner, the Tax Court considered the surrender by her of her interest in the community property the acceptance of an offer for a valuable consideration, and assessed her liability on the basis of the difference between the value of what she surrendered and what she received under the will. It is this position which the taxpayer is defending before us and which we consider legally correct.

33. These figures as to income were stipulated to and the personal expenditures were verified by excerpts from the ledgers introduced as exhibits.

death. About two weeks after his death, Weingart and the attorney for the estate explained the Will to her. She understood that if she took her half of the community property, she received nothing under the Will.

The matter was also discussed with the other co-trustees and finally, on the advice of Weingart, she decided to take under the will, for by so doing, she would have the benefit of the advice of the co-trustees as to investment and the entire estate would be under one management instead of two.

She summed up her testimony by saying that she took under the will because she could not maintain her standard of living on the income from her half and did not wish to lose control of the other half.

These facts were, in the main, confirmed by Weingart, who was consulted by Siegel about the terms of the will. He also corroborated the taxpayer's statement that he advised her to take under the will.

A good portion of the estate consists of the ownership of apartment properties.

In the light of this recital of facts, it is quite evident to us that the Tax Court's determination that there was a transfer, the consideration for which was the value of the community property interest that she surrendered taxable only to the amount of the excess of the value of her transfer over what she received, is not clearly erroneous.[34] Indeed, we believe that no contrary conclusion is warranted. And, as the foregoing discussion discloses, we are also of the view that the Tax Court applied the law correctly to the facts.[35]

The petition for review is denied and the order of the Tax Court affirmed.

34. 26 U.S.C., 1952 Ed., § 1141(a); I.R.C., 1954, § 7482(a), 26 U.S.C. § 7482(a). And see cases cited in Note 4, supra; Rule 52(a), Federal Rules of Civil Procedure.

35. And see, Chase National Bank v. C. I.R., 1955, 25 T.C. 617.