ESTATE OF GERTRUDE HOFFMAN, DECEASED, ARNOLD HOFFMAN AND SHARLENE LEVENTHAL, COEXECUTORS, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3326–80.     Filed June 17, 1982.

*Lee H. Brockett*, for the petitioners.
*Karl D. Zufelt*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined an estate tax deficiency of $10,684.73 against the Estate of Gertrude Hoffman. Several issues have been resolved by agreement of the parties. The remaining dispute concerns property which was subject to administration of the probate estate of Gertrude Hoffman's late husband and which, on completion of administration, was transferred to a testamentary trust established by him of which she was the trustee and the sole income beneficiary for life. The question presented is whether certain assets thus transferred to the trust belonged to Gertrude Hoffman, and, if so, whether in the circumstances of this case her failure to receive them constituted a transfer thereof by her to the trust, thus causing such assets to be included in her gross estate by reason of her life interest pursuant to section 2036, I.R.C. 1954. The case was submitted on the basis of a stipulation of facts.

Gertrude Hoffman (hereinafter sometimes referred to as the decedent), a resident of Los Angeles, Calif., died on July 2, 1976. The executors are her two children, Arnold E. Hoffman and Sharlene Leventhal, of Anaheim, Calif., and Los Angeles, Calif., respectively. The estate tax return was filed with the Los Angeles, Calif., District Director.

Isadore Hoffman, the decedent's husband, died on September 30, 1971, and the decedent was named as executrix of his will. His estate consisted solely of community property. During the period of administration, the estate received interest, net of income taxes in the amount of $28,695.63. The estate paid Federal estate tax of $24,489.22, and State inheritance tax of $3,778, or a total of $28,267.22 in death taxes.

Because Isadore's estate was solely community property, the decedent was entitled to receive one-half of the estate outright. In respect of the remainder, Isadore's will provided that all assets aside from automobiles and specified items of tangible personal property (which were bequeathed directly to his wife)[1] were to be placed in a trust of which the decedent was

---

[1]The first and final account of the executrix indicates that the only tangible personal property of any value thus bequeathed directly to his wife consisted of an automobile valued

named as the sole trustee. The income from the trust was to be paid to the decedent during her lifetime, together with so much of the principal as was necessary to provide her with an annual income, from all sources, of $10,000. At her death, the remaining principal and any undistributed income were to be paid to the children.

Isadore's will included a provision which sought to discourage litigation contesting the will. This "no contest" provision purported to deny the benefits of the testamentary disposition (including the trust to be created thereunder) to any party who should "contest in any court any of the provisions of this instrument." The will also included a provision directing that all estate and inheritance taxes payable by reason of Isadore's decease be paid out of the residue of the estate.

Prior to division of the estate into the share to be received by the decedent outright and the share to be received by her in trust, the Federal estate tax and State inheritance tax were both paid. The interest income received by the estate, net of income taxes paid thereon, was apparently lumped together with all other estate assets subject to the allocation between the decedent's community share and the testamentary trust.

The Government contends that the assets of Isadore's estate were improperly apportioned between Gertrude Hoffman's community share and the testamentary trust, resulting in overfunding of the trust in the amount of $28,481.42. More specifically, the Government's position is that the addition of the probate income (here, the net interest after income taxes) to the probate estate, and subtraction of estate and inheritance taxes from the probate estate, both prior to apportionment by equal division of the estate between the surviving spouse's community share and the testamentary trust, were improper under California law. According to the Government, all probate income should have been distributed to the decedent (one-half attributable to the wife's community property rights and the other half attributable to her rights as income beneficiary of the testamentary trust), and the estate and inheritance tax burden should have been borne solely by the

---

at $600 and household furniture and furnishings valued at $200. Since she in any event owned one-half of each of these items by reason of her community property interest, the amounts bequeathed consisted of the remaining one-half owned by the husband.

husband's one-half interest in the community property (and not equally by the wife and the husband's estate). Based on this premise, the decedent in effect transferred $28,481.42[2] to the testamentary trust, in which she had a lifetime interest, with the result of inclusion of this amount in the decedent's estate under section 2036(a), I.R.C. 1954.[3]

Although petitioner concedes that estate and inheritance taxes should have been allocated solely to the husband's one-half interest in the community property and thus charged ultimately against the testamentary trust, it contends that probate income was properly allocated. Petitioner further contests the Government's determination of the amount overfunded as a result of the improper tax allocation, but concedes that any amount overfunded is a transfer described in section 2036(a). Despite this concession in respect of the applicability of section 2036(a), petitioner argues that no increase in the estate should result, on the ground that any contest of the improper allocation by the decedent would have caused a forfeiture of her life estate pursuant to the "no contest" provision of Isadore's will, and, thus, value in excess of the amount transferred was given in exchange for the transfer.

1. *Income allocation.*—Under California law, one-half of community property belongs to the surviving spouse. Cal. Prob. Code sec. 201 (West 1956).[4] Prior to July 1, 1975, however, when the husband predeceased his wife, both the surviving wife's share and the decedent husband's share of the

---

[2]This $28,481.42 figure represents the sum of one-half of the net income of the estate ($14,347.81) and one-half of the death taxes ($14,133.61).

[3]SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the income therefrom.

[4]Sec. 201. Title of surviving spouse; portion subject to testamentary disposition or succession

Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent * * *

community property were subject to administration in his estate and were liable for his debts. Cal. Prob. Code sec. 202 (West 1956);[5] see also *Bishop v. Commissioner*, 152 F.2d 389, 390 (9th Cir.) revg. 4 T.C. 588 (1945); *Skaggs v. Commissioner*, 75 T.C. 191, 203 (1980), affd. per curiam 672 F.2d 756 (9th Cir. 1982). Despite this procedure for administration of the property, it is clear that, at least since 1927, the surviving wife's interest in the community is "'present, existing and equal'" with that of her deceased husband. *Commissioner v. Siegel*, 250 F.2d 339, 345 (9th Cir. 1957), citing Cal. Civ. Code sec. 161a.

While there is no doubt that these rights of the decedent entitled her to the probate income attributable to her one-half share of the community property (see *Bishop v. Commissioner*, 152 F.2d at 390), the Government contends that the decedent was in fact entitled to all of the probate income. The will of the decedent's husband provided that all of his assets, except for a few items of tangible personal property, were to be placed in a testamentary trust of which the decedent was the sole income beneficiary for the remainder of her lifetime. As the Government points out, under California law (*In re De Laveaga's Estate*, 50 Cal. 2d 480, 326 P.2d 129, 131 (1958)):

in the case of a testamentary trust, unless the will provides otherwise, the life tenant's right to income dates from the death of the testator rather than the date of distribution.

Thus, it is argued, the income earned by the estate's share of the community property during the period of administration was earned for the benefit of the surviving wife (the decedent herein).

We agree with the Government that probate income attributable to the estate's share of the community property rightfully belonged to the wife. She apparently chose to leave it in the trust, and whatever her reason for doing so, the fact remains that by failing to assert her rights to this property she effectively transferred it to the trust in which she had a

---

[5]Sec. 202. Death of husband, property subject to debts and administration, disposal; death of wife, husband's powers and duties relating to property

Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division 3 of this code * * *

lifetime income interest. Under section 2036, the property must therefore be included in her gross estate.[6]

Petitioner seeks to avoid this result by a formalistic argument that California law requires distribution of the estate's share of the probate income directly to the testamentary trustee, regardless of the proper disposition of the income thereafter under trust administration.[7] We find this argument unpersuasive.

It may well be that, as a matter of form under California law, the income earned during administration was technically distributable to the testamentary trust upon completion of administration; nevertheless, the surviving wife was then entitled to have that income paid over to her as the income beneficiary of the testamentary trust. In substance, the probate income belonged to the wife, and it is a matter of no consequence whether it was paid to her directly by the husband's estate or whether it first passed from the estate to the testamentary trust and then was distributed by the testamentary trustee to herself as life beneficiary of that trust. In short, it was her income, regardless of the number of steps it would formally take for it to reach her.

Certainly, if the widow as testamentary trustee had distributed the probate income to herself as beneficiary, and, if she in turn had then affirmatively returned it to herself as trustee to become part of the trust corpus, there could be no serious question that section 2036 would be applicable. The result cannot, and should not, be any different merely because she failed to assert her right to that income in the first instance and thus permitted it to remain in the trust. And there is nothing in the record to show that the income was ever paid to her from the trust, nor does the record disclose that it never became and remained part of the corpus of the trust. In view of this state of the record, we have no alternative but to approve the Government's position that there has been an overfunding of the testamentary trust. The probate income was rightfully

---

[6]Petitioner, as noted above, has conceded that any overfunding of the trust "is clearly a transfer described in sec. 2036 of the Code." Petitioner's Opening Brief at p. 15.

[7]See *In re De Laveaga's Estate*, 50 Cal. 2d 480, 326 P.2d 129, 132 (1958).

hers, and we must assume, in the absence of evidence to the contrary, that such income, either directly or indirectly,[8] wound up in the testamentary trust of which she was the sole income beneficiary. Plainly, this constituted a transfer "described"[9] in section 2036, and the decedent's gross estate must accordingly be increased by the amount overfunded.

2. *Transfer for value.*—On brief, petitioner's primary argument involves a novel approach to avoid inclusion of the transferred property in the decedent's estate under section 2036(a), particularly to the extent that the testamentary trust was overfunded by reason of charging the estate with only one-half of the death taxes. In substance, petitioner contends that section 2036(a) is inapplicable because the widow received consideration for the overfunding. It is true that section 2036(a) includes an exception for a transfer which is a "bona fide sale for an adequate and full consideration."[10] In an attempt to channel the instant facts within the safe passage of this exception, petitioner contends that the decedent had no choice but to accept the equal distribution approved by the court,[11] since any challenge to the approved distribution would have resulted in the loss of her rights under her husband's will (i.e., her life estate in his share of the community property) pursuant to the "no contest" provision of his will. According to petitioner, the decedent thus exchanged the amount transferred to the trust for a life estate which is said to be of greater value, with no resulting increase in the decedent's estate.

As support for its position, petitioner analogizes this situation to the "widow's election" case, in which a widow who forfeits her community property rights, in exchange for a life estate in all of the community under her husband's will, is allowed a "credit" against the amount transferred equal to the

---

[8]It is, of course, a matter of no consequence whether the particular cash amount, or the equivalent in other assets, found its way into the testamentary trust as a result of the equal division (between the widow and the testamentary trust) of all the remaining assets at the time of completion of administration of the husband's estate.

[9]See note 6 *supra.*

[10]See note 3 *supra.* See also sec. 2043(a), I.R.C. 1954, which provides that when a transfer is made for insufficient consideration, only the excess of the amount transferred over the consideration received is included in the gross estate under sec. 2036.

[11]We note that such equal distribution seems to have been proposed by counsel for the estate and the widow, herself, as executrix.

value of the interest which she receives. See *Commissioner v. Siegel*, 250 F.2d at 349; *Estate of Gregory v. Commissioner*, 39 T.C. 1012, 1020 (1963). We find this analogy faulty.

In the "widow's election" situation, the widow is forced to do just that: make an election between the exercise of her rights in her share of the community property provided for under State law, and a life interest in all of the community property, which interest can be obtained only by compliance with a provision of her husband's will requiring the forfeiture of her State law rights. In contrast, the decedent here was given a life estate in her husband's share of the community property without any requirement that she relinquish any of her State law rights. In other words, there was no election to be made. Petitioner attempts to treat the present situation as the equivalent of such an election, in reliance upon the improper allocation of estate assets and the "no contest" provision in the will. We hold otherwise.

It cannot be said that the decedent "sold" or "exchanged" the transferred portion of her community share for a life estate in her husband's share, since she would have received the life estate even if there had been no such transfer due to an improper allocation. Moreover, we are unconvinced that, had the decedent challenged the improper allocation, she would have suffered a forfeiture of her rights under the will. The "no contest" clause by its terms applied only to a contest of a *provision* of the will, and a challenge to the allocation of the estate assets would have in no way brought into question the validity of any provision of the will. In fact, the will expressly provided that estate and inheritance taxes were to be paid out of the residue of the estate, and, thus, a challenge to an allocation apportioning the taxes in a different manner would have upheld, rather than controverted, a provision of the will.

For these reasons, the transfer by the decedent to the trust was not a bona fide sale for consideration, and the amount transferred must be included in the decedent's gross estate, in full, pursuant to section 2036(a).

3. *Amount to be included under section 2036(a).*— The Government contends that the amount transferred to the trust by the decedent was $28,481.42. This figure is the sum of one-half of the death taxes (1/2 × $28,267.22 = $14,133.61) and

one-half of the net probate income (1/2 $\times$ \$28,695.63 = \$14,347.81). On brief, petitioner submitted somewhat confusing computations on the basis of particular assets included in the estate at the time of allocation between the widow and the testamentary trust. Petitioner argues that certain of these assets were worth less at decedent's death than at the date of distribution of her husband's estate, and that, for purposes of section 2036(a), the assets must be included in the decedent's estate at the lesser value.[12] The underlying basis for this contention is unsound.

The items which were improperly allocated, between the decedent's community property share and the testamentary trust, were probate income and death taxes. In the absence of evidence to the contrary, we must assume that the probate income was received in cash, and that cash was paid to satisfy the death taxes. We have previously held that the decedent had the beneficial interest in all of the probate income; thus, it was cash or a right thereto that she was deprived of when one-half of the income was distributed to the trust, regardless of the form of that distribution (see note 8 *supra*). The death taxes should have been paid from the residuary of the estate *after* its separation from the decedent's community share; instead, by virtue of the improper allocation, cash which should have been allocated to the community share was used to pay the taxes. Because in both instances it was *cash* that was improperly shifted from the community share to the residuary (and then its equivalent to the testamentary trust), no issue is presented as to differing values of other assets on the date of distribution and the date of decedent's death. The Government's computation of the amount transferred (\$28,481.42) is correct, whether considered as cash, right to cash, or cash equivalent.

Moreover, petitioner's computations involve a valuation of a certain mix of assets supposedly transferred to the trust by the widow. But even if such valuation were otherwise relevant, petitioner has failed to demonstrate, in support of its confusing computations, that those same assets were still in the trust on the date of the wife's death.

---

[12]See sec. 20.2031–1(b), Estate Tax Regs.

In accordance with the foregoing,

*Decision will be entered under Rule 155.*