ESTATE of Lela Barry VARDELL, Deceased, First National Bank in Dallas, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 19040.

United States Court of Appeals
Fifth Circuit.

July 11, 1962.

---

3. By "unsecured" appellant evidently means not covered by the supersedeas bond.

Wisdom, Circuit Judge, dissented.

Henry C. Coke, Jr., James K. Rushing, Leland E. Fiske, Dallas, Tex., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, R. P. Hertzog, Acting Chief Counsel, I.R.S., Robert N. Anderson, John A. Bailey, Attys., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Washington, D. C., for respondent.

Before BROWN, WISDOM, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This is an estate tax case.[1] It is an appeal by the taxpayer from an adverse decision of the Tax Court. 35 T.C. 50.

Lela Barry Vardell died on September 12, 1955. Her husband, T. W. Vardell, died testate on February 27, 1934. They were domiciled in Texas and all of his property was community property. He put his wife, the decedent here, to an election under his will, either to retain her community one-half interest and receive no part of his estate, or to allow her community one-half interest to be governed by the terms of his will and to receive specified benefits thereunder.[2]

In the latter event, the husband, by Item Two of his will, bequeathed to his wife all of the community property, which, of course, was only his one-half therein "for the term of her life, and so long as she shall remain a widow, she to have, during such time, full and absolute authority to handle, manage, sell, and in any manner dispose of said properties, or any part thereof, and to invest and re-invest any proceeds received from the sale of any part of said properties * * * ".

The will then provided that in the event of the remarriage of Mrs. Vardell, all property owned by the husband at the time of his death then remaining undisposed of together with the proceeds then on hand received from the sale of any part thereof would pass immediately to the trustees named in Item Three of the will. Her interest on the community was expressly excluded from the operation of this clause. Thus, she would lose only the life estate and the power of disposition over the one-half interest in the community owned by her husband, retaining in the event of remarriage a life estate in and the power of disposition over her one-half interest in the community; losing in any event however, the remainder interest in her one-half. Stated differently, Mrs. Vardell exchanged the remainder interest in her one-half of the community for a life estate in the one-half interest of her husband in the community, with the life estate being defeasible in the event of her remarriage.

Legal title to the remainder interest in the whole of the community passed under the will to Trustees. The beneficiaries under the trust were the two daughters of Mr. and Mrs. Vardell and their lineal descendants.

Decedent elected to take under the will of her husband. A gift tax return was filed by her on the contribution made as a result of the election, and taxes in the amount of $6,617.50 were paid.[3] At the conclusion of the administration of the estate of the husband in 1935 all of the community assets were turned over to decedent and she managed these assets during her lifetime, receiving all of the income therefrom. She never remarried. At her death the remaining community assets passed to the trust under the terms of the will of her husband. At the date decedent elected to take under the will the total value of the whole of the community was $2,304,564.68, attributable, because of taxes and other expenses allocable to the estate of the husband at his death, 53.8% to her interest in the community assets, and 46.16% to the interest of her husband.

1. Jurisdiction is invoked under § 7482 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7482.

2. There is no issue as to the validity of the election here. The doctrine of election by the surviving spouse where the will deals with the entire community estate is well established under Texas law. Dakan v. Dakan, 1935, 125 Tex. 305, 83 S.W.2d 620; Smith v. Butler, 1892, 85 Tex. 126, 19 S.W. 1083; and 44 Tex. Jur., Wills, § 285 et seq.

3. The record shows that counsel for Mrs. Vardell advised her at the time that she was not liable for a gift tax. Under the ruling of the Tax Court the estate is entitled to a credit for the gift tax paid. The taxing statute governs and not the erroneous ruling of an internal revenue agent. Technicolor Motion Picture Corp. v. Westover, 9 Cir., 1953, 202 F.2d 224; Chicago Flag & Decorating Company v. United States, 7 Cir., 1941, 119 F.2d 413.

■■ The value of the whole of the community property remaining undisposed of at the time of the death of the widow, valued as of a date one year thereafter, was $3,972,582.99, of which $2,138,838.68 (53.84%) was attributable to the share of Mrs. Vardell. None of the value of this property was included in the Federal estate tax return filed as being in her gross estate. The Commissioner, in determining the deficiency in estate tax, included the community of Mrs. Vardell in her gross estate and the Tax Court affirmed this action, holding that it was included under § 2036 of the 1954 Revenue Code, 26 U.S.C.A., § 2036,[4] stating that the transfer by her to the remaindermen was not completed until her death. It would also have been includible under § 2038 of the Code. 26 U.S.C.A., § 2038.[5] We would reach the same point taxwise under either or both.[6]

4. "§ 2036. Transfers with retained life estate
"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
"(1) the possession or enjoyment of, or the right to the income from the property, or
"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

5. "§ 2038. Revocable transfers
"(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—
"(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."
Cf. Allen v. Trust Company of Georgia, 5 Cir., 1945, 149 F.2d 120, aff'd 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367.

6. This matter has proceeded from the beginning on the premise that the whole of the community of Mrs. Vardell was included in her gross estate under § 2036 but respondent now urges us to affirm the judgment of the Tax Court on the basis that the property was includible under § 2033 of the Code rather than under § 2036 as the Tax Court held, a procedure authorized to us where the Tax Court reaches the right decision but for the wrong reason. Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224. Section 2043(a), the credit statute, infra, does not apply to property included in the gross estate under § 2033 which provides for the inclusion of the value of property of the decedent "to the extent of the interest therein of the decedent at the time of his death."
But the remainder interest here vested during the lifetime of decedent in the trustees and the life estate and the power of disposition expired with her death. She had no interest within the scope of § 2033. This is so because the transfer, notwithstanding the power of disposition, was of a vested remainder under the Texas law. Uncertainty as to the amount remaining upon the expiration of the life estate does not prevent vesting. Stated differently, the power of disposition did not raise the life estate of the widow to a fee. Caples v. Ward, 1915, 107 Tex. 341, 179 S.W. 856; Edds v. Mitchell, 1945, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470, and the wealth of authorities therein cited. See also Simes and Smith, The Law of Future Interests, 2d Ed., § 1488, p. 378:
"The authorities are overwhelmingly in favor of the proposition that an unlimited power to dispose of the fee or absolute interest when coupled with a life estate does not enlarge the life estate to a fee or absolute interest, and the remainder which follows is valid."
These life estate authorities are to be distinguished from those authorities concerned with joint and mutual wills hold-

Petitioner took the position before the Tax Court that none of the interest of Mrs. Vardell in the community property was includible because its transfer under the election to which decedent was put constituted a bona fide sale for an adequate and full consideration in money or money's worth within the meaning of § 2036. Alternatively, if there was less than a full consideration, it was urged that decedent was entitled to a credit under § 2043(a) of the 1954 Revenue Code, 26 U.S.C.A., § 2043(a),[7] which in effect allows a credit for the amount of the consideration for a transfer, where it is less than full consideration. The gross estate under this section includes only the excess of the fair market value of the property over the value of the consideration received therefor by a decedent where a transfer has been made under §§ 2035 to 2038, inclusive, and § 2041, of Title 26.[8]

▪ The Tax Court disposed of the case by holding the transfer by Mrs. Vardell of her one-half interest in the community to have been incomplete until her death, and that her community was

includible in her gross estate under § 2036. This holding was based on the power of disposition vested in Mrs. Vardell by the terms of the will which rendered the remainder contingent as to property. The law of Texas dictates the type of property interest involved, here a life estate, see Footnote ([6]), supra, and this transaction falls squarely within the terms of § 2036. The Tax Court missed the mark however in failing to apply § 2043(a).

▪ The government concedes that this property, if not includible under § 2033, and we have held that it is not, is includible under § 2036. And we hold, contrary to the contention of the taxpayer, that the transfer was not for a full consideration under § 2036. We put aside any question as to gift tax since it is admitted by the government that the gift tax collected was not due. Nor are we concerned with a valuation of the property transferred by Mrs. Vardell since the very purpose of § 2036 and the related sections is to include all of such property in her gross estate subject to such credits, if any, as may be due.

ing property interests devised thereunder to the survivor by language substantially as follows to be defeasible or conditional fees:

"[Survivor shall have all property owned by either or both at the time of the demise of the first to die] to be used, occupied, enjoyed, conveyed and expended by, and during the life of such survivor, as such survivor shall desire, [and upon the death of such survivor any of the estate then remaining shall be vested in named persons]". Tillman v. Mahaffey, Tex.Civ.App., 1952, 252 S. W.2d 255; and Scales v. Scales, 5 Cir., 1962, 297 F.2d 219.

In Phinney v. Kay, 5 Cir., 1960, 275 F.2d 776, involving the estate of a survivor under a joint and mutual will containing similar terms, we held the whole of the community, rather than the one-half taken by the survivor subject to estate tax as a power of appointment under what is now § 2041. No question of a credit under § 2043(a) was involved.

In Ellis v. First National Bank in Dallas, Tex.Civ.App., 1958, 311 S.W.2d 916, the power under the will of the widow here to make a gift of a part of the property, free of the testamentary

trust, was upheld, but without reference to the type of estate received by the widow under the will, or transferred by her.

7. "§ 2043. Transfers for insufficient consideration

"(a) In general.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and § 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

8. § 2035—Transfers in contemplation of death
§ 2036—Transfers with retained life estate
§ 2037—Transfers with reversionary interest retained
§ 2038—Revocable transfers
§ 2041—Powers of appointment

This brings us to the remaining questions presented. They are: first, whether the transfer was for a consideration within the meaning of § 2043(a); and if so, then second, how the credit is to be computed.

■ The question regarding consideration under § 2043(a) is of first impression. However, such an exchange has been held to be for a consideration under the gift tax statute. § 1002 of the 1939 Revenue Code, 26 U.S.C.A., § 1002: Commissioner v. Siegel, 9 Cir., 1957, 250 F.2d 339; Chase National Bank, Trustee for Marie Moran v. Commissioner, 25 T.C. 617, reversed on grounds not here applicable sub. nom. Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231; and Turman v. Commissioner of Internal Revenue, 1961, 35 T.C. 1123. Section 1002 uses consideration in the same sense as it is used in § 2043(a). Commissioner v. Bristol, 1 Cir., 1941, 121 F.2d 129. We hold that the life estate received by the widow constituted consideration within the purview of § 2043(a). Accord: Restat. Contracts, § 75(1) (c) (d), § 90; Williston on Contracts, Rev. Ed., 1936, § 113; Corbin on Contracts, 1950, § 194.

Having determined that there is consideration as contemplated by § 2043(a), we come to the method and possibility of computation. The Regulation, § 20.-2043–1, provides that the consideration must be reducible to a money value. And the consideration received is to be valued at the time of the transfer, i. e., the date of election. Ithaca Trust Company v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. Once valued, it is to be credited against the value of the property of the widow at the time of her death. The net is what is to be included in the gross estate.

■■ The computation of the value of the consideration received here by the widow is complicated but not made impossible by the remarriage provision in the will of the husband which renders defeasible the life estate transferred to decedent in the event of her remarriage. The Treasury Regulations provide a method of valuation of the life estate. 26 C.F.R., Table A, § 81.10(j), Treasury Regulations 105. Value is a question of fact to be determined by ascertaining in terms of money what the property would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793. The hindsight method can be used in arriving at a value. Nourse v. Riddell, D.C.Cal., 1956, 143 F.Supp. 759. This is possible because the credit may not be claimed until after the death of the person receiving the consideration. Then it is known if, and when, she remarried and what sums were paid to her prior to her remarriage.[9] However, the credit is in no event to exceed the lesser of the amount of the life estate valued as of the date of election and the sums actually received prior to remarriage.[10] This rule will give effect to the intent of Congress that there be a credit for the consideration, and will at the same time limit the credit to the maximum valuation possible as of the date of transfer.

■ In summary, the gift tax on inter vivos transfers supplements the estate tax on transfers at death. Estate of Sanford v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, but it is undisputed here that the gift tax is inapplicable and that there was a transfer subject to estate tax. The interest that was here transferred by de-

9. Valuing a life estate, defeasible on remarriage, is not unknown to the Congress. See Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 914(j) wherein the probability of remarriage where lump sum settlements of awards are made is to be determined in accordance with the remarriage tables of the Dutch Royal Insurance Institution.

10. The value of the life estate received by Mrs. Vardell in the husband's part of the community assets on the date of election was $454,014.36. During her lifetime she actually received $1,012,272.12 from the life estate.

cedent during her lifetime for less than a full consideration was of the § 2036 type to which § 2043(a) applies, as distinguished from being an interest owned at the time of her death under § 2033 to which it does not apply. Our application of § 2043(a) to permit credit for what she received in consideration of the transfer of the remainder in her community as against the value at her death of the property transferred accords with what we deem to be the intent of the applicable statutes, i. e., single taxation and not double taxation as would result if the estate was not credited for the value of the property transferred. Her estate is in no wise depleted for estate tax purposes. Under the computation of the credit what she gave is equal to what she received.

We reverse and remand for such other proceedings as may be necessary and which are not inconsistent herewith.

WISDOM, Circuit Judge (dissenting).

I respectfully dissent.

Until her last expiring breath Mrs. Vardell enjoyed all the economic benefits of the whole of the property: income, possession, management, control, disposition. Until the moment of death she could do with the property as she pleased. Death shifted the economic benefits. Death was the taxable event. The property, therefore, should be included in her estate under the general provision, Section 2033.

No one expects perfect symmetry in the federal estate and gift tax structure. Nevertheless, there are several unifying principles of such importance that violation of these principles tends to weaken the whole estate and gift tax structure. Thus, it is basic and worth repeating that "the real subject of the [estate] tax" is not property but the "shifting of economic benefits of property"; it is the "ter-mination of the power of control at the time of death * * * the termination of the power of disposition * * * by decedent at death which operates as an effective transfer".[11] A corollary is that if a decedent has made a completed gift or transfer of his interest in certain property, the value of that property is not includible in his estate. But if a decedent has retained the beneficial enjoyment and the power of disposition over property included in a so-called gift or transfer, the transaction is not sufficiently final to remove the value of the property from the decedent's taxable estate.[12]

I do not mean to minimize the complexities this case presents. The interrelation of section 2033, sections 2035–2038, and section 2043 is one of the most difficult problems in tax law.[13] I start, however, with the visceral reaction: doctrinaire formulae must yield to the sense of the situation when a literalistic application of tax language conflicts with fundamental principles on which the tax structure is based. It is inconceivably unrealistic to allow the Vardells, through identical wills allowing an election, to place *half* of their property beyond the reach of estate and gift taxes and still enable the surviving spouse to enjoy the full economic benefits of the *whole* of the property [14]

The majority of the Court hold that Mrs. Vardell transferred her interest in the community property subject to retained powers that bring the transfer "squarely" within section 2036; they find that she received in exchange a consideration which, though not adequate to afford a complete escape from section 2036, may be claimed as a deductible credit under section 2043(a). The Court takes it as conceded that there was a transfer, at least within the meaning of section 2036, and brushes aside any question as

11. Chase National Bank v. United States, 1929, 278 U.S. 327, 49 S.Ct. 126, 73 L. Ed. 405, 63 A.L.R. 388.

12. Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20.

13. See Warren and Surrey, Federal Estate and Gift Taxation (1961) p. 405.

14. The effect of the decision of the Court is not, of course, limited to cases involving community property.

to when the gift tax on this transfer was due.

When Mrs. Vardell exercised her election to take under her husband's will, she received a life interest in her husband's half of their community property plus a power to consume, a "full and absolute authority to handle, manage, sell, and in any manner dispose" of her husband's share. Moreover, unlike Mrs. Siegel and many widows exercising an election to take under a deceased husband's will, she did not surrender her half of the community property to trustees entrusted with possession, disposition, and control, becoming a mere income beneficiary; [15] she surrendered only testamentary power over her half, retaining during her lifetime the same unrestricted powers of possession and disposition over her half that she enjoyed over the half acquired from her husband. Looking at the transaction as a business deal, it was no small bargain. Whatever the bare power of testation may be worth, it was worth far less than Mrs. Vardell received for it. It was such a bargain as to jerk the scales dramatically in Mrs. Vardell's direction and to put beyond dispute the fact that she received valuable consideration within the meaning of the

exception to sections 2036 and 2038. The transaction, to the extent that it was any sort of an exchange or transfer, was for full consideration. Plus. The rub is that Mrs. Vardell did not make a transfer sufficient to take her property out of her estate for tax purposes.

The Supreme Court has held in several different contexts that when a transferor retains economic control, such as the power of disposition over property that is the subject of a transfer by gift or otherwise, the real transfer, which is the taxable event, is the subsequent release or termination of control. Bullen v. Wisconsin, 1916, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830; Saltonstall v. Saltonstall, 1928, 276 U.S. 260, 271, 48 S.Ct. 225, 227, 72 L.Ed. 565, 568; Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Chase National Bank v. United States, 1929, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Sanford's Estate v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Smith v. Shaughnessy, 1943, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690.[16] In the Chase National Bank case the Court declared that termination "of the power of control at the time of death inures to the benefit

15. Commissioner v. Siegel, 9 Cir., 1957, 250 F.2d 339; Chase National Bank, 1955, 25 T.C. 617, rev'd on other grounds, sub. nom. Commissioner v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231, cert. den'd, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575; Turman v. Commissioner, 35 T.C. 1123. The donor attached no strings to the transfer in these gift tax cases. Hence, the question in this case as to the finality and effectiveness of the transfer for which the consideration is received was not touched upon in these decisions.

16. Bullen involved the question whether Wisconsin could include in the gross estate of a resident decedent property which the decedent had transferred subject to a retained power of disposition before becoming a resident of Wisconsin. Saltonstall and Reinecke both concerned whether property so transferred could be subjected to an estate tax enacted after the transfer, Saltonstall involving a Massachusetts law and Reinecke involv-

ing a federal statute. Chase involved the question whether estate tax on property so transferred assessed at the time of death, when the power was relinquished, could be upheld constitutionally as an indirect tax on a transfer. Sanford's Estate raised the question whether a gift tax could be levied when such a retained power of disposition is relinquished. All of these decisions upheld the tax in question on the ground that the taxable transfer occurred when the retained power was relinquished. In Smith the taxpayer had established a trust under which the income was to be paid to his wife for life; on her death the corpus was to be returned to the grantor if he was still living; otherwise it was to be distributed under his wife's estate. The question was whether a gift tax was payable on the remainder interest in the property; and the Court held that since that interest, like the life estate, had been placed beyond the taxpayer's control the gift of it was complete and a tax due on it.

of him who owns the property subject to the power, and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax." 278 U.S. at 338, 49 S.Ct. at 129. In Sanford's Estate, the Court followed the rationale "that 'taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed' * * * and that a retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death." 308 U.S. at 43, 60 S.Ct. at 56.

Mrs. Vardell's complete economic control over the property cannot be contested. In a case involving the validity of a substantial gift by the same Mrs. Vardell to one of her two daughters, the Texas Court of Civil Appeals construed the testamentary language in Mr. Vardell's will as giving her *full and absolute* authority to handle, manage, sell, and *in any manner dispose of*" the property. (Emphasis by the Court of Civil Appeals). Ellis v. First National Bank in Dallas, 1958, 311 S.W.2d 916, err. ref'd N.R.E. The Court upheld the validity of the gift, quoting Texas authority that "disposition" means "a power of alienation and one of broad scope without regard to whether it be by sale or gift", and that "where the survivor takes a conditional fee, or even a life estate, with full power of disposition, he may dispose of the property as he sees fit during his lifetime."[17] Aside then from her lack of testamentary power, a lack compensated for by the inter vivos power of disposition, there were no limitations on Mrs. Vardell's dominion over the property. She was not a trustee; she was not required to preserve, protect, or account for any of the property for the benefit of the remaindermen. In Scales v. Scales, 5 Cir., 1961, 297 F.2d 219, a joint and mutual will of a husband and wife provided that the survivor "shall use, occupy, enjoy, convey, and expend their property * * * as survivor shall desire", the remaining estate on the survivor's death to be "vested" in the children. This Court held that under Texas law the surviving spouse had a defeasible or conditional fee-simple title giving her the power to act imprudently, improvidently, or in bad faith; she could convey or expend all of the property without qualification.

I do not question the validity of the election or the effectiveness of the will, as a matter of state law. It may well be that under the law of Texas the remainder "vested" in the trustees named in the will—even though the trust did not come into existence until Mrs. Vardell's death. In the common law a life tenant may have an absolute power to use all of the property for his own benefit and, by a general power of appointment presently exercisable or an unlimited power to consume, extinguish all future interests.[18] Perhaps in cataloging common law property interests—no mean undertaking—it may be useful to tag a future interest subject to complete defeasance as a "vested remainder". But looking at the realities from a tax point of view we cannot equate such a vesting with a "transfer". The situation is analogous to the creation of a trust valid under state law but ineffective under the tax law as a "transfer". Helvering v.

17. The taxpayers here argue that the holding in Ellis v. First National Bank in Dallas must be restricted to the existence of a power in Mrs. Vardell to make a gift. While the case related only to the validity of the gift, the Court of Civil Appeals rested its decision on Mrs. Vardell's broad and absolute authority to dispose of the property "in any manner." The taxpayers also argue that the power to make gifts does not include the power to consume or invade the corpus for the decedent's benefit. As an abstract proposition, that may be so; here, concretely, Mrs. Vardell's power of disposition was unlimited. In the Ellis opinion the court pointed out that Mrs. Vardell was not bound by the testamentary clause restricting the trustee's powers to the uses and purposes of the trust.

18. Simes, Future Interests, 1 Amer.Law of Property, § 4.106, § 4.109.

Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Mallinckrodt v. Nunan, 8 Cir., 1945, 146 F.2d 1. Hirschmann v. United States, S.D.N.Y., 1962, 202 F. Supp. 722, concerned a life tenant with a power to consume the corpus. The will, similar to the Vardell will, provided that "our children and remaindermen will have to be satisfied with what will be left at the death of the survivor of either of us spouses". The Court properly regarded the life tenant as the beneficial owner of the corpus and held her liable for capital gains taxes. Her "unfettered power to expend the entire corpus for her own benefit rendered the absent powers so insignificant" that she could not complain, if, for purpose of taxation, she was treated as the full owner.

In Phinney v. Kay, 5 Cir., 1960, 275 F.2d 776, the husband and wife executed a joint and mutual will under which the survivor was to have all of the estate which either or both owned, to be used, conveyed, or expended during the life of the survivor, the remainder to be divided between their two sons. All of the assets were community, as in this case. This Court construed the survivor's "unlimited and unquestioned power to dispose of property" as "amounting to a taxable general power of appointment" under § 811(f), Internal Revenue Code of 1939, which was "not limited by an ascertainable standard relating to Mrs. Kay's health, education, support, or maintenance". We said:

"'[T]he survivor * * * was given the unqualified right to use, occupy, enjoy, convey and expend * * * the property as she saw fit. The two daughters were not given any present interest * * *. They were not vested with any right to interfere with her mother in the exercise of the title * * * [to the property], nor were they given any vested right, title or interest in the proceeds of any sale she might make. She was not required to preserve, protect, nor account for any of the property to the daughters. These are not incidents of a life estate,

which presupposes a vested title in a reversioner other than the life tenant. As said in Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, 879. "In the instant case the testators in language free from ambiguity have clothed the survivor with the unqualified right to convey the property during his or her lifetime and have limited the rights of the remaindermen to whatever estate remained in the survivor at his or her death * * *."

Under Phinney v. Kay, there is no doubt that had Mrs. Vardell's election occurred *after* October 21, 1942, her unlimited power would have been included in her estate as a general power of appointment under Section 2041(a) (2) of the 1954 Code.

The exception from estate taxes of transfers made for consideration has long been a basic feature of the estate tax system. It was present in the "first modern estate tax," enacted in 1916, and has been continued ever since. It is incorporated in the gift tax statute. See Merrill v. Fahs, 1945, 324 U.S. 308, 311–312, 65 S.Ct. 655, 89 L.Ed. 963. Today the exception appears in sections 2035, 2036, 2037, and 2038, the four sections concerning inter vivos transfers which, but for the exception, are insufficient to remove property from the decedent's estate. There is good reason for this exception. Both the estate tax and the gift tax are levied on donative transfers. They are an excise on the privilege of leaving or giving one's property to one's chosen beneficiaries. Neither tax is intended to cover bona fide sales which, as a rule, form no part of a person's plan for the distribution of his estate. The consideration exception works as a useful instrument in screening the transfers that are donative from those that are not. A gift in contemplation of death affords a simple illustration of its operation. If a husband gives his house to his wife a year before his death, the gift will be included within his estate under section 2035. If it be shown that the alleged "gift" was actually in exchange

for full consideration, it will not be included. And if the "gift" was made for two-thirds consideration, the surplus third will be included. In each case the property transferred in contemplation of death will be included, except to the extent that it is matched by consideration of equal value.

Looking "squarely" at the realities of the situation, it is doubtful that Mrs. Vardell's relinquished power of testation is capable of evaluation. It is not reducible to money value. Robinette v. Helvering, 1943, 318 U.S. 184, 187, 65 S.Ct. 540, 542, 87 L.Ed. 700. The sufficiency of consideration is determined by fair market value. If it has a value in a case of this kind, the value is so little that almost any consideration would have sufficed. If such nominal consideration were effective, it would tear the estate tax law to shreds. The sliding scale would slide upside down: the more power a person retained over "transferred" property the less consideration he would need to slip the property out of his estate through the consideration exception. Any person could, just before death, transfer his property but retain all powers over it and escape the estate tax altogether. The only resort of the courts would be to reject the realities of the situation and require that the consideration equal not the property rights that the transferor was actually transferring but rather the full value of the additional property that he was purporting to transfer. Though this solution would restore the balance of the statutory scheme, it would not hit the problem where the problem really exists: the fictitious nature of the original "transfer."

The majority opinion states that where the evaluation of the consideration is un-

certain because of a condition attached to the consideration (in this case the wife's life interest would terminate on her remarriage) the evaluation can be made by hindsight. Thus the court looked to the amount of income Mrs. Vardell actually received from her husband's property to determine the value of consideration. In the case of the consideration received by Mrs. Vardell, there is no doubt that she received a property interest and that so long as she lived and remained unmarried she was entitled to the income; her interest was as firm as an outright life estate, and better, thanks to her complete power of disposition; only its duration was more uncertain. (In life estates the uncertainty is solved by using life expectancies, which will not suffice for so unpredictable an event as remarriage.) On the other hand, the property, some time and perhaps, to be transferred by Mrs. Vardell on her death, was subject to the far greater uncertainty that its completion remained entirely within her discretion. Not merely its value but its very existence was in doubt.

To determine whether sufficient consideration was given, the Court looked to the 1935 value of the remainder interest in Mrs. Vardell's property. This view assumes that the widow transferred the remainder interest in 1935, and when she died in 1955 her retained life estate simply terminated so that no new interest passed to the remaindermen. There was therefore nothing to be taxed. Whatever validity there may be to this approach in a case when a widow in fact gives up her share of the community (or her separate property, for that matter) in return for a bare life estate, that is not this case.[19] Here, the effect of Mrs. Vardell's retained

19. Some authorities take the position that notwithstanding the recognition of the widow's election as a transfer, for gift tax purposes, the widow's retention of the use, enjoyment, or income for life results in her estate being taxable to the extent of her share of the community. Jackson, Community Property and Federal Taxes, 12 Sw.L.J. (1958) 1, 25. See also Amer.L. Inst., Federal Income Estate and Gift Tax

Statute, tentative Draft No. 11, p. 40 (1956). But see Thurman, Federal Estate and Gift Tax Taxation of Community Property, 1 Ariz.L.Rev. 252, 266 (1959) and 2 Roehner on Federal Taxation Para. 2 and 5 RFT para. 17. Sections 2036, 2037, 2038 and 2043 apply to transfers where there is no consideration or inadequate consideration received in exchange.

powers made the transaction an at-death transfer.

The exclusion of the property interests held by Mrs. Vardell at her death from the operation of section 2033 cannot be justified by Helvering v. Safe Deposit & Trust Company of Baltimore, 1942, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513.[20] There the Court held that property is not within a decedent's estate when he had a life interest in it and held but did not exercise a power of disposition over it. There and in similar cases these rights were received from someone else, and the decisions rest on the analysis that mere possession of a right of disposition that was given to the decedent gratuitously and was never exercised by him should not suffice to bring property within his ownership for estate tax purposes.[21] When the holder of this power died, the property is deemed to have passed to the succeeding beneficiary directly from the original grantor. Such an analysis cannot be used to rationalize exclusion of property from the estate of an original grantor who has retained the power of disposition over the property in his own hands. In this latter case, it must be acknowledged that the property passes to the beneficiaries from the decedent; the only question is when. There are only two possible answers: the time of the initial conditional transfer, or the subsequent time when the conditions are removed. This presents the question whether the initial transfer was effective to take the property out of the decedent's estate. This question did not arise and was not decided in the Safe Deposit & Trust Company case. That case therefore does not stand as a precedent either way for the resolution of this question.

The taxpayer concedes, and the majority of the Court acknowledge, that no gift tax was due when Mrs. Vardell subjected her property to the conditions decreed in her husband's will. The concession merely bows to the indisputable. The Supreme Court in Sanford's Estate v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, specifically held that when a person gives property subject to a retained power of disposition, the taxable gift occurs when, and not until, the retained power is relinquished. See also Blumberg v. Smith, 7 Cir., 1943, 138 F.2d 956; Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, 336. I consider this point decisive. Certainly a gift tax, at the least, would be payable in 1955. But a gift at death is by definition just what the estate tax is designed to cover. Had Mrs. Vardell relinquished her retained powers over the property one day before her death, the gift would have been expressly includible in her estate as a gift in contemplation of death under section 2035. The property certainly should not be any less includible because held down to the last instant of life.

Any appearance of a transfer at the time of the widow's exercise of her election was illusory. Mrs. Vardell had the beneficial enjoyment of the property while she lived. It was hers at death. It passed from her when she died. It falls in her estate under section 2033.

I have not discussed the effect the decision might have on the income tax field.[22] If, as the court held, Mrs. Vardell made a purchase for a consideration, she would have a cost basis for income tax purposes with respect to the interest which she acquired; and she could recover her basis by amortizing it against future receipts of income. She would be in a taxpayer's Utopia. Under her husband's will, Mrs. Vardell had the "absolute authority to * * * sell, and in any manner dispose of" her property and her husband's and at the same time she

20. For similar lower court cases see 2 Mertens, Law of Federal Estate and Gift Taxation 236, n. 48 (1959).

21. Under current law such a power of disposition even though received from another and not exercised would cause the property to be included within a person's estate under Section 2041. Phinney v. Kay, 5 Cir., 1960, 275 F.2d 776.

22. The majority's holding can not be reconciled with Helvering v. Butterworth, 1933, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365.

would be entitled to the tax benefit of recovering it as though it were an out-of-pocket cost.

I would affirm the result the Tax Court reached.