**Myra B. ROBINSON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 81–4078.

United States Court of Appeals, Fifth Circuit.

May 14, 1982.

Rehearing Denied June 10, 1982.

Edward R. Smith, Lubbock, Tex., for petitioner.

M. Carr Ferguson, Glenn L. Archer, Jr., Asst. Attys. Gen., Michael L. Paup, Chief, Appellate Section, Richard Farber, Michael Roach, Attys., Tax Div., Dept. of Justice, Kenneth W. Gideon, Chief Counsel, I. R. S., Washington, D. C., for respondent.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The husband of a Texas-domiciled taxpayer died in 1972, leaving a will that required his wife, as a condition of taking under the will, to elect to let his will direct the disposition of her share of the community property. The wife elected to take under the will, and, accordingly, she placed her share of the community property in a trust, reserving the income for life and retaining a power of appointment that permitted her to make gifts to her children, the surviving spouse of any deceased child, or to charity. Four years later the wife released the retained power of appointment. The Tax Court held that this release constituted a taxable gift of the remainder interest of the trust, and we affirm.

The taxpayer, Myra B. Robinson, is the widow of G. R. Robinson, who died testate in 1972. The Robinsons had during their marriage accumulated a considerable amount of property. Under Texas community property law, Mrs. Robinson was the

owner of a present, vested one-half interest in the property acquired during the marriage.[1] When her husband died in 1972, her interest in their community property was not part of his gross estate for federal estate tax purposes.[2] Texas law, however, permits the husband to make a conditional bequest to his wife, putting her to the election of allowing him to direct in his will the disposition of her share of the community property. *Estate of Vardell v. Commissioner*, 307 F.2d 688, 690 n.2 (5th Cir. 1962) ("The doctrine of election by the surviving spouse where the will deals with the entire community estate is well established under Texas law.").

Under the provisions of her husband's will, Mrs. Robinson was offered the choice of either accepting the benefits provided for her in the will and permitting the provisions of the will to control the disposition of her share of the community property, or receiving only a specific bequest of personal effects if she retained her one-half interest in the community property. Mrs. Robinson filed a timely election to take under the provisions of the will. Thereafter, her husband's executors transferred her share of

the community property to a trust known as the "Myra B. Robinson Trust" (the "W trust") and the assets of her husband's estate, except his separately bequeathed personal effects, to a trust known as the "G. R. Robinson Estate Trust" (the "H trust"). Mrs. Robinson was to receive all of the net income from the W trust, plus an annuity from the H trust in the amount of four percent of its initial value, after deduction of debts, taxes and administrative expenses.

Under the W trust, in conformity with the will's provisions, Mrs. Robinson received the income for life, and she had the power to appoint during her life any part of the trust assets to any one or more of the children born of her marriage to G. R. Robinson, or to the surviving spouse of any deceased child, in such proportion as she might see fit. In addition, she had the power to appoint any part of the W trust during her life or by will to charity, in such proportion as she might see fit.[3] On March 26, 1976, Mrs. Robinson released her power of appointment under this clause of the will. The value of the corpus of the W trust was then $881,601.38.

1. Texas Fam.Code Ann. §§ 5.01, 5.22 (Vernon 1975); Johanson, Revocable Trusts, Widow's Election Wills, and Community Property: The Tax Problems, 47 Tex.L.Rev. 1247, 1263 (1969); *see United States v. Stapf*, 375 U.S. 118, 127, 84 S.Ct. 248, 255, 11 L.Ed.2d 195, 203 (1963); *Cooper v. Texas Gulf Indus.*, 513 S.W.2d 200, 201–202 (Tex.Sup.Ct.1974); *Land v. Marshall*, 426 S.W.2d 841, 846 (Tex.Sup.Ct.1968).

Although under prior Texas law, the husband exercised managerial control over the entire community, Tex.Rev.Civ.Stat.Ann. art. 4619 (Vernon 1936), he had no right of testamentary disposition over his wife's half of the property. The Texas Family Code was amended prior to Mrs. Robinson's election to provide that the personal earnings of each spouse and certain other categories of community property constitute sole management community property of the spouse whose property or efforts had created them, and all other community property was joint management community property. Tex. Fam.Code Ann. § 5.22 (Vernon 1975); *see Cooper v. Texas Gulf Indus., supra* at 202. The rule that each spouse has a present, vested one-half ownership interest in the marital community was not changed by the amendment. *Id.*

2. *Commissioner v. Chase Manhattan Bank*, 259 F.2d 231, 239 (5th Cir. 1958) (applying Texas

law), *cert. denied*, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959); Johanson, *supra* note 1, at 1267 ("Although the husband's will purports to dispose of the entire community interest in the assets, only the value of his one-half community share is includible in his gross estate.") (footnote omitted).

3. The pertinent provision of the will provides, in relevant part:

6. During the life of my wife, she shall have the power, by recordable instrument delivered to the Trustee, to appoint any part or all of my wife's Trust free from such Trust to any one or more of our issue (or to the surviving spouse of any of our then deceased children) in such shares, manner and proportions as she shall see fit. In addition, my wife shall have the power, by recordable instrument delivered to the Trustee or by Will, to appoint any part or all of my wife's Trust free from such Trust to any one or more charities in such shares, manner and proportions as she shall see fit. Any such power described in this paragraph may be exercised only in a gratuitous way and not in a way which imposes any condition upon the recipient thereof. * * *

The Commissioner determined that Mrs. Robinson's release of her power of appointment was a taxable gift of the remainder interest in the trust to the remaindermen named in the will of her husband. The Commissioner computed the value of this gift, based on Mrs. Robinson's age, to be $276,717.04.[4] Mrs. Robinson received no consideration for this 1976 release, so the entire value of the remainder interest at that time was treated as a taxable gift.

After the Commissioner issued a notice of gift tax deficiency, Mrs. Robinson petitioned the Tax Court for a redetermination of her gift tax liability. The Tax Court, 75 T.C. 346 (1980), held that (1) the 1976 release constituted a taxable gift, (2) the value of the gift was not reduced under I.R.C. § 2512(b) by the interest Mrs. Robinson received in her husband's property in 1972, and (3) the powers held by Mrs. Robinson as trustee after her renunciation of the power of appointment did not give her sufficient dominion and control over the remainder interest in the W trust to render the gift incomplete. On this appeal from the Tax Court's decision, Mrs. Robinson does not challenge the third holding.

■ Whether or not Mrs. Robinson received a quid pro quo from her husband's bequest, her 1972 transfer of her interest in the marital community property to the W trust was not a completed gift to the remaindermen at that time because Mrs. Robinson retained "the power to name new beneficiaries or to change the interests of the beneficiaries as between themselves." Treas.Reg. § 25.2511–2(c)[5] "There can be no completed gift before the donor surrenders dominion and control of the subject matter of the gift." 4 J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation § 51.04B(1) (1982).

■ Although the parties stipulated in the Tax Court that the value of whatever Mrs. Robinson surrendered as a result of her election to take under her husband's will was less than the value of what she received under the will,[6] we do not rest our finding that there was no taxable gift in 1972 on I.R.C. § 2512(b).[7] If there was no taxable gift by Mrs. Robinson because she did not relinquish complete dominion and control over the trust property in 1972, I.R.C. § 2512(b), the section entitled, "Valuation of Gifts," cannot be applicable. Nor

4. Mrs. Robinson was born on December 20, 1919. The value of the corpus of the W trust on the date of the release was $881,601.38. The Commissioner multiplied this value by the remainder interest factor prescribed by Treas. Reg. § 25.2512–9(f), applicable to a single life, female, age 56, namely, .31388 to determine the value of the remainder interest in the W trust and hence the amount of the gift.

5. See also Treas.Reg. § 25.2511–2(b); R. Stephens, G. Maxfield, S. Lind & D. Calfee, Federal Estate and Gift Taxation § 4.08[7][c] n.108 (4th ed. 1978) (giving a widow a special power of appointment over the remainder to her children would avoid any gift tax by the widow at the time of her election because her transfer would be incomplete for gift tax purposes); Halbach, The Community Property "Widow's Election" and Some of its Surprise Counterparts, 107 Tr. & Est. 108, 109 (1968) ("If [the widow] retains a general or special power of appointment, or other power which would normally render a transfer incomplete for gift tax purposes, no taxable gift will result unless and until the power is released or expires prior to the death of the widow.") (footnote omitted); Johanson, supra note 1, at 1310 ("reservation of the power makes the election transfer in-

complete for gift tax purposes") (footnote omitted).

6. The parties stipulated in the Tax Court that the value of the W trust at the time of Mrs. Robinson's election was $731,741.94 and that the value of the H trust at that time (absent a disputed adjustment for interest) was $483,-962.02. Mrs. Robinson contends that the value of what she gave up, her remainder interest in the W trust, was $195,089.72 ($731,741.94 × .26661 (Treas.Reg. § 25.2512–9(f)), and that is less than the value of what she received by the election, a 4% interest in the H trust with a present value of $236,622.58 ($483,962.02 × .04 × 12.2232) (Treas.Reg. § 25.2512–9(f)).

7. I.R.C. § 2512(b) provides:

Where property is transferred for less than adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar quarter.

is Mrs. Robinson entitled under § 2512 to any reduction in her 1976 gift tax liability for consideration received in 1972. Mrs. Robinson did receive an income interest in the H trust when she transferred her share of the community property to the W trust in 1972, but she received no consideration for her release of the power of appointment in 1976. The consideration received by Mrs. Robinson in 1972 does not diminish her gift tax liability for the wholly gratuitous release in 1976.

Therefore, the release by Mrs. Robinson of her power to change the beneficiaries and their relative portions of the remainder of the W trust in 1976 marked the cessation of her dominion and control over the remainder of the trust and constituted a taxable gift. In an early case interpreting the gift tax laws, the Supreme Court reached a similar result. In *Burnet v. Guggenheim*, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 (1933), the Court held there was a taxable gift when the settlor of a trust who had reserved a power of revocation canceled the power. "If a revocable deed of trust is a present transfer by gift," the Court said, "there is not another transfer when the power is extinguished. If there is not a present transfer upon the delivery of the revocable deed, then there is such a transfer upon the extinguishment of the power. There must be a choice, and a consistent choice, between the one date and the other. *Id.* at 285, 53 S.Ct. at 370, 77 L.Ed. at 750. The Court concluded, "[t]o lay the tax at once, while the deed is subject to the power,

is to lay it on a gift that may never become consummate in any real or beneficial sense. To lay it later is to unite benefit with burden. We think the voice of Congress has ordained that this be done." *Id.* at 288, 53 S.Ct. at 372, 77 L.Ed. at 753. The Supreme Court reaffirmed this holding in *Sanford's Estate v. Commissioner*, 308 U.S. 39, 43, 60 S.Ct. 51, 56, 84 L.Ed. 20, 22–23 (1939), stating "a retention of control over the disposition of trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death."

Mrs. Robinson was the transferor of her share of the marital community property to the W trust. She was the settlor or creator of that trust and reserved a life income interest for herself and the special power of appointment over the remainder interest. Mrs. Robinson's retained power to appoint the remainder of the W trust was in legal effect a power to alter or amend the trust and not a power to appoint. Treas.Reg. § 25.2514–1(b)(2), provides that "the term 'power of appointment' does not include powers reserved by a donor to himself."[8] As Professor Johanson has noted, "[s]ince the wife is regarded as the transferor of her share of the community property, her invasion power would be a reserved grantor power,"[9] hence of course rendering the gift incomplete.

If the power had not been created by Mrs. Robinson (or reserved by her for herself), it would have been a special power of appointment,[10] the release of which would

---

8. *Cf.* Treas.Reg. § 20.2041–1(b)(2) ("the term 'power of appointment' does not include powers reserved by the decedent to himself within the concept of sections 2036 through 2038").

9. Johanson, *supra* note 1, at 1276 (footnote omitted). *Accord, id.* at 1267 (By choosing to allow the disposition of her community share to be controlled by the terms of her husband's will, the wife in effect makes a transfer of her interest to the trustee named in the will, under the trust terms provided therein.") (footnote omitted). Professor Johanson adds: "Consequently when the wife reserves what amounts to a general *inter vivos* power of appointment over the corpus of the W trust ... the case should be treated the same as [a] case ... in which the wife in terms reserves the power to

revoke the trust. As in that situation, so also here the wife has not, by electing, presently agreed to give anybody anything. *Id.* at 1304–05. *Accord*, G. Bogert & G. Bogert, The Law of Trusts and Trustees § 282, at 312 (rev. 2d ed 1977) ("The gift tax powers of appointment section applies only to donated powers, those received by the holder from another, and not to powers reserved by a donor in making an inter vivos transfer, nor to the powers of an owner of an interest in property to dispose of his interest.") (footnote omitted).

10. A general power of appointment means, with certain exceptions, "any power of appointment exercisable in favor of the person possessing the power ..., his estate, his credi-

not have been a taxable gift.[11]   However, the power was created and held by her and it is not to be treated like a special power of appointment created by a donor and given to her.

Finally, Mrs. Robinson argues that the remainder interest in the W trust, over which she had a power of appointment,[12] would not have been included in her taxable estate at her death if the power had not been exercised, and that, therefore, its surrender during her life should not be taxable as a gift.   Although Mrs. Robinson is correct in urging that the estate and gift tax laws are to be applied in pari materia,[13] we hold that the major premise of her argument is incorrect.   The corpus of the W trust would have been included in Mrs. Robinson's gross estate had she died without releasing her power of appointment.[14]   In *Sanford's Estate v. Commissioner*, 308 U.S. 39, 43–44, 60 S.Ct. 51, 56, 84 L.Ed. 20, 22–23 (1939), the Supreme Court held,

> a transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms so as to designate new beneficiaries other than [herself] is incomplete and becomes complete

so as to subject the transfer to death taxes only on relinquishment of the power at death.

Indeed, I.R.C. § 2036(a)(2) requires inclusion in the gross estate of "the value of all property to the extent of any interest therein of which the decedent has made a transfer (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise under which he has retained for his life ... the right ... to designate the persons who shall possess or enjoy the property or the income therefrom." [15]   In addition, I.R.C. § 2038 requires inclusion of "the value of all property ... [t]o the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), ... where the enjoyment thereof was subject at the date of death to any change through the exercise of a power ... by the decedent ... to alter, amend, revoke, or terminate."   *See Estate of Vardell v. Commissioner*, 307 F.2d 688, 691 (5th Cir. 1962) (the community interest of the decedent would have been included in her gross estate because the "transfer by her to the remaindermen was not completed until her

---

tors, or the creditors of his estate." Treas.Reg. § 25.2514–1(c)(1). A special power of appointment is any power that is not a general power.

11.  Treas.Reg. § 25.2514–3(e) provides the following example:
> The income is to be paid to L for life.... If in this example L had a power to cause the corpus to be distributed only to X, L would have a power of appointment which is not a general power of appointment, the exercise or release of which would not constitute a transfer of property for purposes of the gift tax.

12.  We will continue to refer to Mrs. Robinson's power to affect the enjoyment of the remainder interest in the trust as a power of appointment or special power of appointment, although as we have noted, the power is in effect a power to alter, amend, or revoke.

13.  In *Sanford's Estate v. Commissioner*, 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20, 23 (1939), the Court stated
> [t]here is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to sug-

gest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death.... The two [taxes] are in pari materia and must be construed together.

*Accord, Jewett v. Commissioner*, —— U.S. ——, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982); *Burnet v. Guggenheim*, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748, 751 (1933).

14.  *Estate of Vardell v. Commissioner*, 307 F.2d 688 (5th Cir. 1962), discussed by us *infra*, is not to the contrary.   It held the corpus of the trust includable in the wife's estate but allowed an offset for the value of what she received under the election.

15.  *See also* I.R.C. § 2036(a)(2) requiring that the value of the gross estate include property the decedent has at any time transferred retaining a life estate.

death" under either I.R.C. § 2036 or I.R.C. § 2038).[16]

As a corollary to her argument based on an analogy to the estate tax laws, Mrs. Robinson urges that, even if the remainder interest in the W trust would be included in her estate at death, she would be entitled to the benefits of either the bona fide sale exceptions of § 2036 and § 2038, or the consideration offset in I.R.C. § 2043(a).[17] Therefore, Mrs. Robinson urges that the dominion and control provision of the estate tax laws do not dictate the determination of estate tax liability when adequate and full consideration was received at an earlier time for the interest now attempted to be included in the estate, relying on *Estate of Vardell v. Commissioner*, 307 F.2d 688, 694 (5th Cir. 1962). We there applied I.R.C. § 2043(a) "to permit credit for what [the widow] received in consideration of the transfer of the remainder in her community as against the value at her death of the property transferred." Thus, according to Mrs. Robinson, even if she made a gift in 1976 because of the release of her power of appointment over the remainder in the W trust, she should have no gift tax liability because, as the parties stipulated, she received more property in 1972 than she gave up by reason of her election to take under the will.

This argument, however, misperceives the relationship between I.R.C. § 2043(a) and I.R.C. § 2512(b). I.R.C. § 2043(a) provides that, if a transfer is not a bona fide sale for

adequate and full consideration, "there shall be included in the gross estate only the excess of the fair market value at the time of death . . . over the value of the consideration received therefor by the decedent." The provision requires the valuation of the consideration received by the decedent *at the time* the decedent made the transfer, a time that necessarily *predates* the decedent's death. Sections 2036(a) and 2038(a) also look to a time prior to the laying of the estate tax to determine if the transfer, at the time it was made, was for adequate and full consideration.[18] These provisions were the basis for our allowance of the offset in *Estate of Vardell, supra.*

The gift tax, however, does not "value [the property] at a moment of time antecedent to the time when the gift became complete." *Goodman v. Commissioner*, 156 F.2d 218, 219 (2d Cir. 1946). Section 2512(b) implies that the consideration received at the moment of transfer of the property is the consideration to be measured.[19] "[T]he statute and applicable Treasury Regulations impel the conclusion that taxable value for gift tax purposes is the value of the gift to the donor *at the moment it is made.*" *Goodman*, 156 F.2d at 219 (emphasis added). In 1976, when the gift was made, Mrs. Robinson received no consideration. We cannot look to 1972 to find consideration for a wholly gratuitous release of a power four years later. We imply no opinion concerning whether, having released her power

---

**16.** The remainder interest was not, by definition, property *transferred* for a full and adequate consideration because, evidently, it was *not* transferred.

**17.** I.R.C. § 2043(a) provides that for any transfer covered by §§ 2035–2038 that is made

for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration . . ., there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received thereafter by the decedent.

**18.** I.R.C. § 2036(a) & 2038(a) both provide, in part: "The value of the gross estate shall include the value of all property to the extent of

any interest therein of which the decedent has *at any time* made a transfer." (Emphasis added.) *But see* note 20, *infra.*

**19.** I.R.C. § 2512(b) provides, in part: "Where property is *transferred for* less than adequate and full consideration . . . ." (Emphasis added.)

Consideration offsets should, of course, be allowed in gift tax cases when the consideration was received contemporaneously with the transfer and when the donor did not retain sufficient dominion and control over the transferred property to make the gift incomplete for gift tax purposes. *See, e.g., Commissioner v. Siegel*, 250 F.2d 339, 344–45 (9th Cir. 1957).

over the remainder, the value of the remainder interest in the W trust included in Mrs. Robinson's estate will be offset by consideration received in 1972. That question is not now before us.[20]

Mrs. Robinson's release of her power of appointment in 1976 fixed the rights of the remaindermen and thus vested in them irrevocably what could otherwise have been snatched from them by a whim. It literally completed what had before been inchoate, a mere hope. It is this completed transfer that constitutes the taxable event under the federal gift tax statute.

The decision of the Tax Court is AFFIRMED.

---

**20.** We note that various commentators have considered such a question. Professor Johanson suggests that on the widow's death she should not be entitled to a § 2043(a) consideration offset for the value she received at the time of the election if she did not at the time of the election "receive a measurable interest in her husband's property" or if she did not "transfer a measurable interest in her property to third persons." Johanson, *supra* note 1, at 1295. If a widow had the power to revoke the trust, then her transfer of her interest in the marital community property to the W trust by electing to take under the will did

> not presently transfer a measurable interest to the remaindermen. Looking at the transaction at the time of her decision (which is the critical point of time in determining whether she has made a transfer for a consideration), there is no assurance that anything of value will pass to the remaindermen for the wife may revoke the trust. By electing, the wife has not agreed to give anybody anything. Whether the children will actually receive the remainder interest upon her death will turn on a subsequent event—namely, whether or not she revokes the trust. Her

decision to exercise or to forego exercise of the revocation power will come in the future; this decision will not be made for a consideration.

Johanson, *supra* note 1, at 1303. *See also id.* at 1311–12 ("a consideration offset should be denied when the wife retains even a limited power of testamentary disposition"). Professor Johanason concludes his analysis by suggesting that a § 2043(a) "consideration offset should be limited to election-transfers for gift tax purposes." *Id.* at 1311. *Accord,* R. Stephens, G. Maxfield, S. Lind, D. Calfee, *supra* note 5, at § 4.08[7][c] n.108 (If at the time of the widow's election she did not make a completed gift, "the bargain or exchange aspect of the widow's election seems to disappear and the creation of the trust may involve only a straight bequest by the husband and a concurrent transfer by the wife to the trust for no consideration. Lack of consideration for her transfer would increase the amount included in her estate."). *But see Estate of Vardell v. Commissioner,* 307 F.2d 688, 694 (5th Cir. 1962) (allowing consideration offset to reduce amount included in estate even though wife had control over the property until she died).