**UNITED STATES of America,**
**Appellant,**

v.

**Martin Wright GORDON et al.,**
**Appellees.**

**No. 25018.**

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1969.

Rehearing Denied Feb. 5, 1969.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Willy Nordwind, Jr., Jeanine Jacobs, Attys., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., for appellant, Andrew L. Jefferson, Jr., Asst. U. S. Atty., of counsel.

Theo F. Weiss, Edward R. Finck, Jr., San Antonio, Tex., for appellees, Clemens, Knight, Weiss & Spencer, San Antonio, Tex., of counsel.

Before GOLDBERG and CLAYTON *, Circuit Judges, and HANNAY, District Judge.

* Judge Clayton did not participate in the decision of this case. The present opinion is rendered by a quorum of the court pursuant to 28 U.S.C.A. § 46.

GOLDBERG, Circuit Judge:

■ We are again presented with a question of the relationship between the Estate Tax provisions of the Internal Revenue Code and the community property laws of Texas. This appeal by the government from the district court's judgment[1] in this tax refund suit involves the interrelationship between Sections 2036(a)[2] and 2043(a)[3] of the Internal Revenue Code of 1954 and the characterization of the proceeds from life insurance policies under the Texas law of community property. This confrontation of the retained interest provisions of the estate tax sections of the Code with the community property laws of the State of Texas requires that we accommodate the one to the other and seek a confluence even though they emerged from different law makers, arose at different times, and served different functions.[4]

Daisy Wright, the decedent whose estate is the taxpayer here, and Martin Wright, her husband who predeceased her, were residents of Texas at all relevant times. Several years prior to his death, Martin Wright transferred several policies of insurance on his life to trustees of a life insurance trust, reserving incidents of ownership including the powers of revocation, withdrawal, and substitution. Upon the death of Martin Wright, the insurance proceeds were paid to the trustees who were required to hold the proceeds for the benefit of Daisy Wright for life, with the remainder interest to go to the children of Daisy and Martin. All premiums were paid with community funds.

The precise questions before this Court are:

(1) Whether, when the insurance trust became irrevocable by reason of Martin Wright's death, there was a transfer by Daisy Wright of one-half of the insurance proceeds with the right to the income from the proceeds reserved to her for her life?

(2) Whether, if there was such a transfer, it was made for a consideration in money or money's worth?

(3) Assuming that both of the above questions are answered in the affirmative, what is the measure of the consideration which Daisy received for making the transfer?

---

1. The district court's opinion is reported at 263 F.Supp. 768.

2. 26 U.S.C.A. § 2036. Transfers with retained life estate

 (a). General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

 (1) the possession or enjoyment of, or the right to the income from the property, or

 (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

3. 26 U.S.C.A. § 2043. Transfers for insuficient consideration

 (a) In general.—If any one of the transfers trusts, interests, rights, or powers enumerated and described in section 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

4. In general, see Morrison, The Widow's Election: The Issue of Consideration, 44 Texas L.Rev. 223 (1965); Lowndes, Consideration and the Federal Estate and Gift Taxes: Transfers for Partial Consideration, Relinquishment of Marital Rights, Family Annuities, the Widow's Election, and Reciprocal Trusts, 35 Geo. Wash.L.Rev. 50 (1966).

The district court answered the first two questions in the affirmative, and then decided that the value of the consideration received was the value of the life estate in all of the insurance proceeds in the trust computed as of the time of the death of Martin Wright in 1947. We affirm the district court on the first two questions. On the third issue, however, we reverse and remand as we find that the consideration received was only the value of a life estate in her husband's community half of the insurance proceeds in the trust.

### I.

The material facts, all of which were stipulated, were summarized by the district court as follows:

"On October 15, 1937, Martin Wright, joined by the decedent, established the Martin Wright Insurance Trust. After the death of Martin Wright, the life insurance proceeds were paid over to the trustees named in the instrument by the insuring company. The proceeds received by the trustees were administered by them in accordance with the terms and provisions of the trust instrument from the date of Martin Wright's death to decedent's death and to the present time. The amount paid to the trustees by the company was $106,670.59.

"Premiums on the policies of insurance described in the trust instrument were paid by Martin Wright with community funds. No agreements existed between Martin Wright and Daisy Wright at any time prior to April 12, 1947, touching on or concerning the policies of insurance placed in the trust, other than that agreement evidenced by the written instrument creating the trust. During the period between April 12, 1947 and May 31, 1961, Daisy Wright made no conveyance, relinquishment, or other disposition of her right under the trust. No actions taken by Martin Wright during the period October 15, 1937, through and including the date of his death, April 12, 1947, with respect to the trust and the insurance policies therein were in fraud of any rights, legal or equitable, of his wife, Daisy Wright.

"Decedent was 64 years of age on the date of her husband's death. The value of a life estate for a 64 year old person in the sum of $106,670.59, is and was the sum of $36,975.23. On April 12, 1947, the value of an income interest for life in $53,335.29 (one-half of $106,670.59) for a person 64 years of age was $18,487.61. As of the date of death of Daisy Wright, on May 31, 1961, one-half of the net assets of the trust had a fair market value of $42,131.05.

"Within the time required by law, there was filed an estate tax return on behalf of the decedent. Upon auditing that return, the Internal Revenue Service made an additional assessment by including in the decedent's estate one-half of the fair market value of the net assets of the trust. The additional tax amounted to $12,133.75, which, together with interest thereon, making a total of $14,074.32, was paid on May 7, 1965. On May 18, 1965, decedent's representatives filed a claim for refund with the District Director."

The relevant provisions of the Martin Wright Insurance Trust are as follows:

"That I, MARTIN WRIGHT, of Bexar County, Texas, joined by my wife DAISY WRIGHT, for and in consideration of $10.00 and other valuable consideration to me in hand paid and of the love and affection that I have for my wife and children, and desiring to create a trust of the proceeds of certain insurance policies upon my life, do hereby agree to deposit with Daisy Wright, T. J. Reneberg, Luther B. Clegg and Theo F. Weiss, as Trustees, the following described policies of insurances, and any policies issued in lieu thereof, on my life, and to cause the insurance companies issuing the same to make the proceeds thereof becoming due by reason of my death to be payable to said Trustees as beneficiary, * * * And I do hereby transfer and assign to said Trustees all sums, benefits, rights, claims and causes of action of every kind accruing by rea-

son of my death under said policies or under any policies issued in lieu thereof.

"This assignment and transfer is in trust, however; and upon my death said Trustees shall collect the net proceeds of said policies, and subject to the terms of this trust, shall hold, manage, invest and distribute the same as a trust fund upon the terms and conditions and with the powers and obligations and for the uses and purposes herein set forth.

### I.

"My Trustees shall pay the entire net income derived from said trust fund to my wife Daisy Wright, so long as she shall live. Should such net income be inadequate or should she for any reason need additional funds, my Trustees are authorized to pay to the said Daisy Wright such sums out of the principal of the trust fund, from time to time as they may deem desirable or necessary.

### II.

"From and after the death of my wife Daisy Wright, or from and after my death if she should predecease me, my Trustees shall pay the net income and said trust fund to my Daughter Durinda Wright Gordon and my son Phil Martin Wright, dividing the same equally between them.

\*　　\*　　\*　　\*　　\*　　\*

### VII.

"My Trustees are authorized and empowered to hold, possess, manage, control, sell, lease, transfer, dispose of, convey, encumber, invest and reinvest the proceeds of, and to partition and distribute any property, or the proceeds of the income from any property, that may come into their hands as Trustees. They shall have the power to sell any or all of such property, upon such terms as they may see fit, and invest the proceeds of such sale or the income from any such property in any way they see fit; it being intended hereby to give unto said Trustees full and complete authority to hold, possess, manage, control, sell, con-

vey, encumber, lease, invest and reinvest the whole and every part of said trust fund according to their sole judgment and discretion, without any limitation upon their powers and authority so to do, either by statute or otherwise. My Trustees are expressly authorized to purchase securities or other property from the Executor or Executrix of my estate or of the estate of my wife Daisy Wright, and to make secured or unsecured loans to such Executor or Executrix of my estate or the estate of my wife; and without any liability of any kind for loss resulting to the trust fund by reason of any such purchase or loan.

\*　　\*　　\*　　\*　　\*　　\*

### XII.

"I agree to pay all premiums assessments and other charges necessary to keep said policies in force and the Trustees shall be under no duty to pay the same or to keep themselves informed with respect to such payments or take any other action to keep said policies in force.

### XIII.

"I reserve and shall have full power at any time and from time to time during my lifetime, without the consent of the Trustees or any beneficiary under the trusts herein created, to exercise any option, election, right or privilege given to the insured by any of said policies, including the right to change the beneficiary therein, to borrow any sums of money in accordance with the provisions thereof, to use any of said policies of security for any purpose whatever, to receive any dividends, earnings of other payments, on any of said policies, and to surrender any of them for its cash surrender value; provided however, that I may assign and relinquish to my wife Daisy Wright, or to any other person, any or all of the rights hereby reserved, and should I assign or relinquish the same to the said Daisy Wright, or any other person, she or such person shall have and possess all the rights and powers hereby reserved.

### XIV.

"I may at any time, and from time to time, by an instrument in writing, delivered to the Trustees, during my lifetime terminate this declaration and agreement in whole or in part or modify or amend it. I shall have the right to make additional insurance policies subject to the terms of this agreement by making said Trustees the beneficiary in said policies or to withdraw any policy or policies from the provisions hereof. The Trustees agree to execute any and all instruments necessary and to permit me to exercise any and all rights reserved by me herein.

"EXECUTED in quadruplicate this the 15th day of October, 1937.

Martin Wright

Daisy Wright"

In this factual context the district court determined that one-half of the proceeds in the Martin Wright Insurance Trust, $42,131.05, should be included in the gross estate of Daisy Wright. The court below reasoned that the life insurance policies forming the corpus of the trust were community property and Martin Wright was acting as manager of the community when he set up the trust. When Martin Wright died on April 12, 1947, the trust became irrevocable and a transfer by Daisy of her community one-half of the proceeds to the trust resulted. Under the terms of the trust instrument, Daisy Wright had a life estate in the income from all of the proceeds. Thus the district court, relying on Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231, cert. den. 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575, held that the transfer made by Daisy Wright at the death of Martin Wright was a transfer with a retained right to income for life within the meaning of § 2036 of the Internal Revenue Code in one-half of the proceeds of the insurance policies in the trust.

The district court further found that this transfer was made for a valuable consideration within the contemplation of § 2043 and that such consideration was the right to income for life from the entire proceeds of the insurance policies. As the life estate in the entire proceeds had a fair market value of $36,975.23, the amount held to be taxable in Daisy Wright's gross estate as a result of her transfer of April 12, 1947, was $5,155.-82.[5]

### II.

### TRANSFER WITH RETAINED LIFE INTEREST

The executors of the estate of Daisy Wright argue that the district court erred when it concluded that Daisy Wright, at the death of her husband in 1947, made a *transfer* of her community half interest in the proceeds from the community owned policies while retaining an interest for life in the income from those proceeds.[6] The transfer con-

---

5. Arranged in mathematical form, the district court's computation was as follows:
 $42,131.05 Value of one-half of the net assets of the trust as of the date of the death of Daisy Wright, May 31, 1961.
 $36,975.23. Value of income interest for life in the entire proceeds from life insurance policies as of the date of the death of Martin Wright, April 12, 1947.
 $5,155.82 Amount taxable in estate of Daisy Wright as a result of her transfer with retained life interest at death of Martin Wright.

6. The government argues that the executors should not now be allowed to challenge the district court's determination that there was a transfer at the time

of Martin Wright's death because the executors failed to perfect a cross-appeal from that portion of the lower court's judgment which was against them and which they now seek to have modified. We find this contention to be without merit.

We acknowledge the general rule to be that a cross-appeal is generally necessary to enable an appellee to ask the appellate court to reverse the part of a decree which is unfavorable to him. Browne v. Makin, 5 Cir. 1949, 177 F.2d 753, 756; see Tilley v. United States, 4 Cir. 1967, 375 F.2d 678; United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell Const. & Equipment Co., 9 Cir. 1961, 293

cept is of critical importance for if Daisy Wright made no transfer, § 2036 would not be triggered and none of the proceeds in the Martin Wright⁑Insurance Trust would be brought back into the gross estate of Daisy Wright at the date of her death in 1961.[7]

The executor's assertion that the district court erred in holding that Daisy Wright made a transfer in 1947 has a two-fold predicate: (1) there could be no transfer because under Texas law life insurance proceeds were not property prior to the 1957 amendment to Article 23(1) of the Texas Revised Civil Statutes,[8] and (2) even if the proceeds were property prior to 1957, she had no managerial or possessory interest in the proceeds which would enable her to make the alleged transfer. The executors have raised a difficult and quite perplexing problem—how can a wife be held to have made a transfer of property, if indeed insurance proceeds constituted property at that time, when her husband had complete management and control of the policies and of the designation of how the proceeds would be paid with only two limitations: (1) he could not create an illusory trust, Land v. Marshall, Tex.1968, 426 S.W.2d 841, and (2) he could not dispose of the proceeds in fraud of the wife's interest, Krueger v. Williams, 1962, 163 Tex. 545, 359 S.W.2d 48.

If this were our first encounter with the transfer issue, we would have to resolve these fundamental inconsistencies which are inherent in the theory of community property. In this Herculean task we would have to analyze both the Texas cases [9] and the federal estate gift tax cases arising out of other community property states [10] which were cited by

F.2d 816, 822, cert. den., 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524. This Court has on occasion taken exception to that rule and has considered the unperfected issue where to do otherwise would cause the Court to make an erroneous determination of the law or cause an unjust result. In Calhoun County, Fla. v. Roberts, 5 Cir. 1943, 137 F.2d 130, 132, we read:

"We are reversing the conclusion of law of the district judge that the recourse is against the County and we esteem it necessary to do justice to reopen his conclusion of law that there was no recourse against any bond proceeds in the balance of the Construction Fund. We act on our own motion and not at the instance of the appellee. We have disturbed no fact finding of the district court (as was done in the Morley Construction Company case [Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593]), but *differing only on the law, we propose to apply in all its consequences the law as we see it. We hold we have the power, without cross appeal, to do this.*" [Emphasis added.]

Cf. Robertson v. Johnston, 5 Cir. 1967, 376 F.2d 43, 44; Jack Ammann Photogrammetric Engineers, Inc. v. Commissioner of Internal Revenue, 5 Cir. 1965, 341 F.2d 466, 467; Glavic v. Beechie, 5 Cir. 1964, 340 F.2d 91, 92 (Judge Wisdom concurring); Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231, 237–238, cert. den., 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575.

7. Section 2036, in relevant essence, provides that the value of a decedent's gross estate shall include the value of any interest which the decedent has transferred while retaining an income interest for life (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth). 26 U.S.C.A. § 2036.

8. Tex.Rev.Civ.Stat.Ann. art. 23, subd. 1 (1959) provides as follows:

"1. 'Property' includes real and personal property, and life insurance policies and the effects thereof."

See Freedman v. United States, 5 Cir. 1967, 382 F.2d 742, wherein the above amendment to Article 23(1) was construed in an estate tax context.

9. See, e. g., Warthan v. Haynes, 1956, 155 Tex. 413, 288 S.W.2d 481; Volunteer Life Ins. Co. v. Hardin, 1946, 145 Tex. 245, 197 S.W.2d 105, 168 A.L.R. 337; Martin v. McAllister, 1901, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585.

10. See, e. g., National City Bank of Cleveland v. United States, 6 Cir. 1966, 371 F.2d 13; Goodnow v. United States, 1962, 302 F.2d 516, 157 Ct.Cl. 526; Estate of Gray v. Commissioner of Internal Revenue, 1950, 14 T.C. 390.

the executors. This, however, is not our first encounter with the transfer question. Judge Wisdom in his very thorough and scholarly opinion in Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231, cert. den., 359 913, 79 S.Ct. 589, 3 L.Ed.2d 575, gave careful consideration to the bulk of this authority and concluded that in 1948 (one year after Martin Wright's death) life insurance proceeds were community property and that the surviving spouse makes a transfer to the named beneficiary (when she is not the named beneficiary) when the policy is transformed into proceeds rights at the death of the named insured. We have carefully studied Judge Wisdom's opinion and find that it has foreclosed the transfer issue in this case.

In the *Chase Manhattan Bank* case, which is factually similar to the case at bar,[11] this Court sustained the Commissioner's imposition on the wife of a federal gift tax on the value of one-half of the policy proceeds that were paid into an insurance trust comparable to the Martin Wright Insurance Trust. In reaching this result this Court concluded that under the applicable pre-1957 Texas law such insurance policies and the bundle of rights in the proceeds were property and assets of the marital community when purchased with community funds. The opinion by Judge Wisdom, in relevant part, reads as follows:

"VI. The Insurance Trust.

The Commissioner's position is that on Daniel's death Marie made a taxable gift of one-half of the value of the proceeds of the insurance policies less the value of a life estate in that half. Chase, the trustee, contends (on appeal) that, although Daniel could revoke the trust and change beneficiaries, Marie could not, and as to her the trust was complete and

irrevocable in 1928 when it was created, and therefore there is no tax. The Tax Court held that there was no tax. Under Texas decisions, as the Tax Court construed them, since a surviving wife has no community property interest in the *proceeds* of insurance payable to a named beneficiary, Marie could make no taxable gift involving any part of the proceeds. We agree with the Commissioner.

\* \* \* \* \* \*

"Summarizing, and readily admitting that our review of the Texas cases tends to over-simplify a complex subject, it seems to us that the following conclusions may be drawn. (1) Without using the terms, Texas courts do in fact recognize that insurance is property and in their holdings, if not their opinions, break down property in insurance between policy-rights and proceeds-rights. (2) Policy-rights in an insurance policy are property, a community asset, when the insurance is purchased with community funds. (3) The wife has a present, vested interest in this asset, as she has in all other community property. (4) This interest ceases, in the absence of fraud, when the policy matures and the bundle of policy rights is converted into insurance proceeds payable to a named third-party beneficiary, just as the wife's interest in any other community asset is cut off by transfer of the assets to a third person. (5) The transfer is from the community. Under Blackmon v. Hansen, only half of the proceeds fall in the husband's taxable estate. The other half is a taxable gift from the wife. (6) The Tax Court, therefore is mistaken in attaching importance to the fact that 'Marie did not have a community interest in the proceeds of the policy as against the named beneficiaries.' That is the orthodox situation with respect to transfers in the

---

11. In both cases the policies insured the husband's life and the premiums were paid with community funds; the husband retained the right to change the beneficiaries of the policies; and he retained the right to modify or revoke the trust. In both cases the proceeds were payable

to the trustees who were directed to pay the income to the wife for life and the remainder to the settlor's descendants. In *Chase Manhattan* the transfer was made when the taxpayer's husband died in 1948; here the husband died in 1947.

absence of fraud and is not inconsistent with subjecting Marie's half to a gift tax.

\* \* \* \* \* \*

"In a community property state where insurance on the husband's life is purchased with community funds, payable revocably to a third person beneficiary, the husband's right to change the beneficiary and all other control over the property are held as agent of the community. *The bundle of rights in the policy is owned by the community. Something happens to this bundle when the insured dies, thereby terminating his control over the property and bringing the community to an end. What happens is, that the community's property interests in the policy-rights are transformed into the beneficiary's right to the proceeds. It is a shift in control and a shift of beneficial interest. This is the transfer that is taxed.*" [Emphasis added.] 259 F.2d at 244–255.

 Following the mandate and teaching of Commissioner v. Chase Manhattan Bank, we find that the district court correctly held that Daisy Wright at the date of her husband's death in 1947 made a transfer of one-half of the life insurance proceeds to the Martin Wright Insurance Trust.[12] Because she

12. The executors would have us distinguish the *Chase Manhattan* case on two grounds: (1) *Chase Manhattan* was a gift tax case whereas this case involves federal estate taxes; and (2) that to follow the *Chase Manhattan* case here would result in a double taxation of Daisy Wright's community half of the proceeds, which was not intended by Congress. We find neither distinction to be persuasive.

In regard to the first distinction, the close relationship between federal estate and gift taxes has long been recognized. In Sanford's Estate v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20, 23, we read:

"*The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together.* [Case cited.] An important, if not the main purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property inter vivos which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death." [Emphasis added.] This court has recognized the interrelationship between the estate and gift taxes and has found gift tax cases to be authoritative in estate tax cases. See, e. g., Vardell's Estate v. Commissioner of Internal Revenue, 5 Cir. 1962, 307 F.2d 688, 693, wherein this Court cited the *Chase Manhattan* case as authority for an estate tax proposition.

The executors also argue that the *Chase Manhattan* case should be distinguished on the ground that its application here would result in the subjection of Daisy Wright's community property interest in the insurance proceeds to double estate taxation. The double counting here is an unfortunate side effect of the amendments to the Internal Revenue Code in 1948. At the date of the husband's death, April 12, 1947, the revenue laws then in effect provided a rebuttable presumption that the insured spouse paid all of the policy premiums and, in such instance, required that the insurance proceeds be included in the gross estate of the premium-paying decedent irrespective of the half ownership of the other spouse under state community property laws. Int.Rev.Code of 1939, §§ 811(g) (2) (A) and 811(g) (4), as amended by § 404, Int.Rev.Act of 1942, c. 619, 56 Stat. 798. This law was changed to its present form by § 353 of Int.Rev.Act of 1948, c. 168, 62 Stat. 110, effective for decedents dying after December 31, 1947. Thus, the entire proceeds from the community owned life insurance policies on the life of Martin Wright were taxed in the estate of Martin Wright. When Daisy Wright died in 1961, one-half of these life insurance proceeds were brought back into her estate by § 2036. Consequently her community half of the proceeds was taxed twice because of the change in the law, whereas under the present tax structure they would be taxed only once—when she died.

Equities aside, Congress has the power to change the estate tax laws and to make such changes applicable to the estates of all dying subsequently. See United States v. Manufacturers National Bank, 1960, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158; Thorp's Estate v. Commissioner of Internal Revenue, 3 Cir. 1947, 164 F.2d 966, 969; cf. Fernandez v. Wiener, 1945, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116. Thus the determining

retained an income interest for life in the transferred property, the value of the property she transferred is brought back into her gross estate by § 2036.

## III.

## THE TRANSFER WAS MADE FOR A VALUABLE CONSIDERATION

The government argues that the district court erred in finding that Daisy Wright's transfer of her one-half interest in the insurance proceeds was made for a valuable consideration rather than as a donation. The government recognizes that § 2043(a) [13] embraces a hybrid transaction which is partly a gift and partly a sale—a metaphysical creation unique to estate and gift taxes, see Lowdnes & Kramer, Federal Estate and Gift Taxes (2nd ed. 1962) pp. 297–298 —but it nevertheless argues that Daisy Wright's motive for making the transfer was purely donative—to keep and pass the family wealth on to other family members—and that such intent removes the transfer from the purview of § 2043 (a). Estate of Fannie Bomash, 1968, 50 T.C. No. 64.

██ We hold that the district court correctly determined that the transfer was made for a valuable consideration. The transfer was made pursuant to an estate plan designed to cause the assets of the marital community to pass to the offspring of that community with a minimum estate tax burden, but that alone does not remove the transaction from the coverage of § 2043(a). The presence of donative intent will not remove a transaction from the ambit of § 2043 where a consideration "in money or money's worth" is received by the transferor in exchange for the property transferred. This conclusion is clearly called for by the language of § 2043(a) which provides in effect that the mere inadequacy of consideration does not make the transfer donative. Instead, the inadequacy

factor is what Congress intended, and here that intention is easily discerned. For such Congressional purpose, we look to a report prepared by the Senate Committee of Finance at the time the amendment in question was made:

"This section, which is unchanged from the bill as passed by the House, repeals, effective with respect to decedents dying after the date of enactment of this bill, section 811(d) (5) [the section which caused the inclusion of the entire proceeds in the gross estate of Martin Wright] of the Code, relating to transfers during life of community property includable in the gross estate under section 811(c) or (d) [section 811(c) of the 1939 Code contained the predecessor to Section 2036 of the 1954 Code] of the Internal Revenue Code (such as transfers in contemplation of death, etc.). *The extent to which any such transfer of community property is includible in the gross estate of the transferor is determined under the law at the date of his death (that is, with respect to decedents dying after the date of the enactment of this bill without regard to section 811(d) (5).* [Emphasis added.] S.Rep. No. 1013 (Part 2), 80th Cong., 2nd Sess. 1; 1948–1 Cum.Bull. 331, 332.

Section 2013 of the 1954 Code and its predecessor under the 1939 Code were attempts by Congress to reduce the possible inequities of double taxation that might result because of the dates on which the deaths of the respective members of the marital community might occur. However, since Daisy Wright survived her husband by approximately fourteen years, her estate was not benefited by § 2013 or its predecessors. See 26 U.S.C.A. § 2013. It can, therefore, be said that Congress has foreseen and sanctioned double counting of the kind herein involved. We follow the manifest intentions of Congress.

13. § 2043(a) provides:
"§ 2043. Transfers for insufficient consideration
(a) In general.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

of consideration means only that the entire transferred property is brought back into the decedent's gross estate under § 2036 [14] and then that part of the transfer which was made for a consideration "in money or money's worth" is subtracted out of the gross estate by § 2043(a). By netting out the overage of actual values transferred over the value of the consideration received for making the transfer, § 2043(a) contemplates quasi-donativeness in these transfers. Thus because of the statutory words "but is not a bona fide sale for an adequate and full consideration in money or money's worth," § 2043 applies to transactions which are neither pure barters in the Willistonian sense nor pure gifts—they are statutory hybrids. If purity were the goal of Congress, it would *not* have expressly provided that the inadequacy of consideration does not make the entire transaction donative for estate tax purposes.

We find authority for our holding that the life estate received by Daisy Wright from her husband was consideration for the remainder interest she transferred [15] in the following language from Vardell's Estate v. Commissioner of Internal Revenue, 5 Cir. 1962, 307 F.2d 688, 693:

"This brings us to the remaining questions presented. They are: first, whether the transfer was for a consideration within the meaning of § 2043(a); and if so, then second, how the credit is to be computed.

"The question regarding consideration under § 2043(a) is of first impression. However, such an exchange has been held to be for a consideration under the gift tax statute. § 1002 of the 1939 Revenue Code, 26 U.S.C.A., § 1002: Commissioner v. Siegel, 9 Cir. 1957, 250 F.2d 339; Chase National Bank, Trustee for Marie Moran v. Commissioner, 25 T.C. 617, reversed on grounds not here applicable sub. nom. Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231; and Turman v. Commissioner of Internal Revenue, 1961, 35 T.C. 1123. Section 1002 uses consideration in the same sense as it is used in § 2043(a). Commissioner v. Bristol, 1 Cir., 1941, 121 F.2d 129. *We hold that the life estate received by the widow constituted consideration within the purview of § 2043(a)*. Accord: Restat. Contracts, § 75(1) (c) (d), § 90; Williston on Contracts, Rev.Ed., 1936, § 113; Corbin on Contracts 1950, § 194." [Emphasis added.] [16]

14. Section 2036 provides that where a transfer is made in a bona fide sale for an adequate and full consideration in money or money's worth, nothing is included in the decedent's gross estate under that section. Where the consideration is inadequate, all of the transferred property in which the decedent retained an interest for life is brought back into the decedent's gross estate.

15. "Consequently where a party exchanges property for a life estate, both of equivalent value, there has been no taxable gift because there has been no change in his net economic wealth. The analysis is equally applicable for the purposes of the estate tax. The decedent's taxable estate would be the same whether his investment during his life was in a principal sum at compound interest, in the form of a life estate, or in a life annuity, each interest measured over the same period of time with equivalent interest rates. Hence, the property interest in a life estate or in an annuity is consideration in money or money's worth. These principles have now been accepted by the Commissioner for the gift tax and apparently also for the estate tax." Morrison, supra note 4, at 231.

16. In *Vardell* the husband put his wife to an election under his will, either to retain her community one-half interest and receive no part of his estate, or to allow her community one-half interest to be governed by the terms of his will and to receive specified benefits thereunder. The wife elected to take under the will and by its terms she received a life estate subject to defeasance in the event of her remarriage. This Court held that the life estate she received was consideration for the remainder interest in her half of the community which she gave up under the terms of the will. The government here argues that the *Vardell* case should

See also Commissioner of Internal Revenue v. Siegel, 9 Cir. 1957, 250 F.2d 339, 343–347; Whiteley v. United States, W.D.Wash.1963, 214 F.Supp. 489, 493; Zillah Mae Turman, 1961, 35 T.C. 1123; cf. United States v. Stapf, 1963, 375 U.S. 118, 129, 84 S.Ct. 248, 11 L.Ed.2d 195, 204.

■ We find it immaterial that Daisy Wright did not and could not, at the time the trust became irrevocable and the transfer complete at her husband's death in 1947, elect whether to take her community interest in the insurance proceeds or to take the life estate created by the trust. The transfer had its inception in her joinder with her husband in the execution of the instrument creating the Martin Wright Insurance Trust. By that act she gave up the remainder interest after a retained life interest in her community property interest in the insurance proceeds. In addition, by this act of contemporaneous ratification, see Teas v. Kimball, 5 Cir. 1958, 257 F.2d 817, 824–825; Harris v. Ware, Tex.Civ.App.1936, 93 S.W.2d 598 (writ refused), she gave up her right to challenge the trust on the grounds that the trust was illusory or in fraud of her rights in the property in the marital community. See Davis v. Prudential Ins. Co. of America, 5 Cir. 1964, 331 F.2d 346; Land v. Marshall, Tex.1968, 426 S.W.2d 841; Krueger v. Williams, 1962, 163 Tex. 545, 359 S.W.2d 48. Although her rights in the proceeds and her right to challenge the validity of the trust were inchoate, these rights were nonetheless valuable. Thus by her joinder in the trust instrument, Daisy took affirmative action resulting in a transfer of valuable property rights as much as if she had been put to an election under the terms of her husband's will.

■ Although we find that Daisy in substance elected to transfer community property to the trust in exchange for a life estate under the trust, we do not believe that § 2043(a) requires that the transferor take any affirmative action in consummating the transfer. For the purposes of § 2043(a), it would be sufficient if the transfer were made by operation of law with the transferor having no control over either the property or the means of transfer. Cf. Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231, cert. den. 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575. We find nothing in § 2043(a) which requires trading harangues or the modern equivalent of the medieval pageantry of livery of seisin. All § 2043(a) requires is that the transferor (the decedent whose executors claim the transfer was made for a valuable consideration) receive property or rights whose value "in money or money's worth" is reasonably ascertainable in exchange for the property or rights given up or transferred. Under § 2043(a) the difficult question is not whether the transfer was made for a consideration "in money or money's worth;" the difficult question is the determination of the fair market value of the consideration received.

## IV.

### AMOUNT OF THE CONSIDERATION

■ While we agree with the district court's determinations that the transfer was made for a valuable consideration and that such consideration was less than the fair market value of the property transferred, we find that the district court erred when it held that the value of the consideration which Daisy Wright received for her transfer of April 12, 1947, was the value of the right to receive the income for life from the entire proceeds of the insurance policies.[17] We hold that the value "in mon-

be distinguished on the ground that there the wife was put to an election at the time of the transfer and that here the wife was not called upon to make an election and could not have elected not to make the transfer to the trustees at the death of her husband. We recognize that distinction, but find that it has no bearing on the precedential value of *Vardell* in the case at bar.

17. That right had a stipulated fair market value of $36,975.23.

ey or money's worth" of that consideration was the fair market value of the right to receive the income for life from the one-half of the trust corpus attributable to Martin Wright's community interest in the proceeds.[18] See Vardell's Estate v. Commissioner of Internal Revenue, 5 Cir. 1962, 307 F.2d 688, 690; Commissioner of Internal Revenue v. Siegel, 9 Cir., 1957, 250 F.2d 339.

By definition, the consideration which under § 2043(a) is credited against the value of the property transferred must be the value of the property received in exchange. The logical corollary is that the consideration cannot include the value of the property retained. Thus, the consideration could not be the value of the entire life estate in the proceeds in the Martin Wright Insurance Trust, but rather could be only the fair market value of the husband's half interest in the proceeds at the time of the transfer.[19] We find support for this conclusion in Vardell's Estate v. Commissioner of Internal Revenue, supra:

> "Stated differently, Mrs. Vardell exchanged the remainder interest in her one-half of the community for a life estate in the one-half interest of her husband in the community * * *."
> 307 F.2d at 690.

In Estate of Lillian B. Gregory, 1963, 50 T.C. 1012, 1017, we read:

> "Lillian transferred outright property valued at $65,925.08 to a trust created by her predeceased husband. She received the right to income from $126,-560.39, the corpus of the entire trust at the time of transfer. It is clear that retention of a life estate in one's own property cannot be consideration for a transfer. Sec. 2036(a) (1); Helvering v. Bullard, supra. Indeed, it

was stated in Lillian's estate tax return that: 'Our decedent exchanged her community share in return for a life interest in her husband's community.' Hence, only her life estate in the portion of the trust corpus which her predeceased husband contributed was consideration. * * * *"

On the basis of these authorities, we hold that the district court should have found that Daisy received only an income interest for life in Martin Wright's community half of the insurance proceeds as the consideration for her transfer of the remainder after her life interest in the income from her half of the proceeds. In terms of dollars and cents, the consideration Daisy Wright received was $18,487.61 rather than $36,975.23, which the district court found.

The judgment of the district court is

Affirmed in part and reversed and remanded in part.

---

18. That right had a stipulated fair market value of $18,487.61.

19. We note that there have been at least three alternative means used to measure the value of the consideration: (1) the value at the time of the exchange; (2) the amounts actually received during the life of the decedent; and (3) a fractional amount of the value of the property at the decedent's death. See Morrison, supra note 4, at pp. 240ff. We consider the value at the time of the exchange to be the alternative most in accord with the true nature of the transaction. See United States v. Past, 9 Cir. 1965, 347 F.2d 7, 13 at footnote 4; Estate of Lillian B. Gregory, 1963, 39 T.C. 1012, 1021.